**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN DOE** | **:** | **CIVIL ACTION** |
| | **:** | |
| **v.** | **:** | **NO. 26-2472** |
| | **:** | |
| **THE TRUSTEES OF THE** | **:** | |
| **UNIVERSITY OF PENNSYLVANIA** | **:** | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                      **May 27, 2026**

A white non-Jewish male sues the University of Pennsylvania for denying him admission to its Wharton business school master's program because he is not Jewish. He filed without a lawyer and without disclosing his name. We denied his request to proceed anonymously last month but with leave to show cause as to why we may allow him the extraordinary ability to proceed in a public forum anonymously. He did not respond timely. He moved for an extension ten days later explaining he did not understand our Order. He also attached a memorandum describing why he wants to proceed anonymously. We grant him leave for the late filing reminding him pro se parties must follow our Orders and the Rules of Civil Procedure. We then studied his conclusions. None of them allow him to proceed anonymously under several detailed factors offered by our Court of Appeals. He claims widespread animus in the business community to non-Jewish men and disclosing his name will subject him to physical harm because of "Jewish agencies" ability to harm non-Jewish men. He does not show reasonable fear of severe harm resulting from litigating without a pseudonym. And even if he did, his reasonable fear of severe harm does not outweigh the public's interest in open litigation examining his claims an internationally known business school denies admission of white men because they are not Jewish. We find no cause to proceed anonymously.

## I.  Background

Californian John Doe pro se seeks $6 million in damages and injunctive relief from the Trustees of the University of Pennsylvania for denying his admission to the University's Master of Business Administration program at The Wharton School because he is a "White, non-Jewish male."[1]

### *Mr. Doe wants to proceed anonymously fearing Jewish retribution.*

Mr. Doe will not disclose his name in public filings because he wants to protect his "highly sensitive personal information regarding [his] ancestry, educational records, and potential for future personal harm."[2]

Mr. Doe identifies three harms if he discloses his name: (1) "permanent professional disbarment"; (2) "social stigma"; and (3) "threat of physical violence."[3] Mr. Doe claims in his unidentified "industry," the human resources department are "led and disproportionately staffed by Jewish women" who "already discriminate against non-Jewish White males such as [himself.]"[4] He alleges twenty-five of his co-workers with "Jewish names" received early promotions.[5] He further argues "many high level managers at large employers have publicly stated their organizations [sic] policies prohibit the hiring of White males;" "some" of these unidentified employers "implement policies" to allow for the hiring of a white male only if an "'exception' were granted," and to Mr. Doe's knowledge these "exceptions" are "given exclusively to Jews;" and the "willingness of [Human Relations] Jews to discriminate against non-Jewish White males" makes it reasonable to conclude he "would be completely debarred from traditional employment" if his name is revealed in his lawsuit against the University for "favoring treatment of Jews" in admissions.[6] Mr. Doe also alleges he "considered establishing his own firm as a work-around to discrimination," but he would need an investment from venture capitalists which are "run by

[Venture Capitalist] Jews" who "usually don't invest in firms owned by non-Jewish White males."[7]

Mr. Doe suggests a threat of physical violence to him because Israel's intelligence agency Mossad murdered President John F. Kennedy nearly sixty-three years ago (and "possibly [President Kennedy's] family members") to obstruct President Kennedy's opposition to the interests of "Jewish Supremacists."[8] He claims Mossad is "still active and apparently very powerful" in the United States because of some nebulous connection to the Jeffrey Epstein scandal.[9] Mr. Doe argues litigating under a pseudonym would deter "Jewish agencies" from "murdering" him and he "may have already survived an assassination attempt" through a romantic liaison with a Jewish woman who allegedly attempted to poison him.[10]

### We denied Mr. Doe's request with leave to show cause or amend.

We denied Mr. Doe's Motion for leave to proceed under a pseudonym finding he did not offer a basis to find his identity as a white male who holds beliefs regarding Jewish persons (or persons with Jewish-sounding surnames) presents a reasonable risk of harm or otherwise warrants the exceptional allowance to proceed in this public forum under a pseudonym.[11] We further found Mr. Doe did not show a basis to find Congress through the Family Educational Rights and Privacy Act protects his status as a white male applicant or a basis to seal his "Notice of Contact Information."[12] We allowed Mr. Doe to either file an amended Complaint with his disclosed name and address or file a Memorandum showing cause why we should not lift the seal on his "Notice of Contact Information."[13]

Mr. Doe responded by moving to file out of time and for an extension of time to respond to our April 20, 2026 Order.[14] He attached a Memorandum purporting to show good cause to proceed under a pseudonym.[15] We today grant his Motion for an extension of time and deem his

Memorandum filed. But we find no grounds to allow Mr. Doe to proceed without disclosing his name. Mr. Doe offers no basis to find his fear is within one of the exceptional circumstances permitting a litigant to remain anonymous by proceeding under a pseudonym.

## II. Analysis

We start with the fundamental principle judicial proceedings should be public.[16] Federal Rule of Civil Procedure 10(a) requires litigants to identify themselves in their pleadings.[17] As explained by our Court of Appeals, "[i]dentifying the parties to the proceeding is an important dimension of publicness. The people have a right to know who is using their courts."[18] Defendants "have a right to confront their accusers" and a plaintiff's use of a pseudonym "runs afoul of the public's common law right of access to judicial proceedings."[19]

Our Court of Appeals allow parties to proceed anonymously only in "exceptional cases" as determined by a two-step test.[20] Mr. Doe must first show a "reasonable fear of severe harm" resulting "from litigating without a pseudonym."[21] As explained by our Court of Appeals, "[w]hen a litigant sufficiently alleges that he or she has a reasonable fear of severe harm from litigating without a pseudonym, courts of appeals are in agreement that district courts should balance a plaintiff's interest and fear against the public's strong interest in an open litigation process."[22] If Mr. Doe does not meet his burden of alleging a reasonable fear of harm, he fails at the first step.[23]

If Mr. Doe sufficiently alleges such harm, we apply a balancing test to determine whether his reasonable fear of severe harm "outweighs the public's interest in open litigation."[24] The balancing test at the second step includes an analysis of nine factors. The first six factors weigh in favor of anonymity: "(1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the

litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives."[25]

The remaining three factors disfavor anonymity: "(1) the universal level of public interest in access to the identities of litigants; (2) whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and (3) whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated."[26]

Before applying the two-step *Megless* test, we consider Mr. Doe's representation to us the United States District Court for the District of Massachusetts "recently granted pseudonymity in a virtually identical Title VI action, *Doe v. Harvard*."[27] This is plainly false. First, it appears the John Doe suing Harvard University is the same as the John Doe here on the same theory: denial of admission to Harvard's business school based on discrimination against him because of his "White, non-Jewish heritage."[28] Second, Judge Burroughs **denied** Mr. Doe's motion to proceed under a pseudonym finding he did not meet his burden of rebutting the presumption in favor of disclosure and rejecting his argument litigation involving sensitive personal information regarding his ethnic heritage and academic records as "mere speculation" and concluding it did not constitute an "unusually severe" risk of harm.[29]

Judge Burroughs ordered Mr. Doe to file a notice of his legal name and address but he did not do so, instead choosing to move for reconsideration of her order denying him leave to proceed

under a pseudonym and a stay pending his appeal.[30] Judge Burroughs granted his motion for reconsideration in part, staying the deadline for Mr. Doe to disclose his legal name and address until twenty days after service on Harvard to allow it to respond to the motion for reconsideration.[31]

On May 20, 2026, after considering the Harvard Defendants' opposition to Mr. Doe's motion for reconsideration, Judge Burroughs denied Mr. Doe's motion for reconsideration finding he did not rebut the presumption against proceeding under a pseudonym and denied Mr. Doe's motion to stay his disclosure requirements pending his appeal to the Court of Appeals for the First Circuit, finding Mr. Doe "made essentially no showing, certainly not a strong showing, that he will succeed on the merits, and he has provided no credible, non-speculative argument that he will be irreparably injured absent a stay" and the "public has a strong interest in transparency, weighing against [Mr. Doe's] request for a stay."[32] Judge Burroughs ordered Mr. Doe to file a Notice of his legal name and address by June 2, 2026.

### A.  Mr. Doe does not offer a reasonable fear of severe harm.

Mr. Doe offers, at best, generalized and speculative personal opinions asserting every human resources department in businesses across the country are run by Jewish women and any investment he may possibly require from venture capitalists in some possible future business deal are run by "Venture Capitalist Jews" and revealing his name would somehow cause "severe harm" in the form of "permanent professional debarment" requiring anonymity. Economic harm is not sufficient under *Megless*.[33]

Our Court of Appeals recently rejected a similar argument brought by a Jane Doe against the University of Pennsylvania.[34] Ms. Doe sued the University under Title VI alleging a professor discriminated against her on the basis of her race and, after she reported the discrimination, the University suspended her from a pre-med baccalaureate program. Ms. Doe moved to proceed

6

under a pseudonym denied by Judge Rufe.[35] Judge Rufe rejected Ms. Doe's argument the disclosure of her identity would associate her with the University's suspension and may hinder her chances of acceptance into medical school or her ability to pursue future career opportunities.[36] Judge Rufe concluded Ms. Doe's argument her anonymity is necessary to prevent possible embarrassment and economic harm is insufficient to justify the use of a pseudonym under *Megless*.[37] Judge Rufe also noted two decisions in this District holding diminished chances of acceptance into professional schools does not warrant anonymity.[38] Our Court of Appeals affirmed Judge Rufe's decision finding allegations of possible harm in acceptance to medical school or to secure future employment in the medical profession constitute embarrassment and economic harm insufficient to proceed under a pseudonym.

The case cited by Mr. Doe to support his argument is materially distinguishable.[39] In *Advanced Textiles*, foreign garment workers sued their employer under the Fair Labor Standards Act using fictitious names for fear of termination from employment, deportation, arrest, and imprisonment by the People's Republic of China. The United States Court of Appeals for the Eleventh Circuit held the garment workers could proceed anonymously at the preliminary stages of litigation based on allegations of "extraordinary" retaliation in the form of deportation and threats of arrest and imprisonment by third parties such as the Chinese government and Chinese recruiting agencies.[40] The court of appeals held the garment workers faced "greater threat[s] of retaliation than the typical [Fair Labor Standards Act] plaintiff" and, while threats of termination and blacklisting are "perhaps typical methods by which employers retaliate against employees who assert their legal rights, the consequences of this ordinary retaliation to plaintiffs are extraordinary."[41] The court further concluded the alleged threats by the Chinese government and Chinese recruiting agencies made the fear of harm reasonable.[42]

We are nowhere near these extraordinary facts. We conclude the type of harm alleged by Mr. Doe—possible discrimination by unidentified human resources specialists at unidentified employers and unidentified venture capitalists—constitutes embarrassment and economic harm and does not rise to extraordinary cause required by our Court of Appeals to allow Mr. Doe to proceed anonymously.

Mr. Doe next argues disclosure of his name will cause "social stigma" constituting severe harm under *Megless*. Mr. Doe relies solely on *Doe v. Hartford Life and Accident Insurance Company* to support his "social stigma" argument.[43] In *Hartford Life*, Judge Linares allowed a John Doe plaintiff (an attorney with mental illness concerns) to proceed in pseudonym in claims against a long term disability plan for denial of benefits. The claimant-lawyer suffered from bipolar disorder and sought to proceed under a pseudonym, asserting damage which might result to his professional career as an attorney if his medical condition became public knowledge. Judge Linares reasoned almost twenty years ago mental illness then carried a stigma which "society may not yet understand or accept," and analogized the stigma of mental illness to a woman seeking an abortion or "a homosexual fired from his job because of his sexual orientation" justifying anonymity.[44]

Mr. Doe argues the social stigma he faces is "markedly more severe" than the attorney before Judge Linares with a mental health diagnosis.[45] Mr. Doe candidly characterizes his complaint as making "inflammatory claims" and "[p]eople who mak[e] such claims face enormous social stigma, commonly being branded as 'antisemitic,' 'Nazi,' 'racist,' 'misogynist,' 'homophobic,' 'crackpot,' or 'unpatriotic.'"[46] He claims being called an "antisemite" and "Nazi" in "contemporary times" means "the pinnacle of evil" subjecting him, and other plaintiffs like him, to a "dehumanizing stigma."[47]

Mr. Doe does not offer legal authority supporting his argument social and reputational fears created by *his* allegations he candidly describes as "inflammatory" constitute a reasonable fear of severe harm.[48] Our study further confirmed social stigmatization is insufficient to support a request for anonymity. For example, in *Doe v. Rider University*, Judge Bongiovanni denied an expelled college student's request to proceed under a pseudonym.[49] The expelled student Doe asserted federal and state law claims against his university arising from a disciplinary hearing charging him with sexual assault of a female student. Mr. Doe alleged the university's flawed disciplinary process resulted in his expulsion. He sought to proceed under a pseudonym arguing if he is forced to proceed publicly, he will suffer from the severe social stigma attached to accused sex offenders making it difficult for him to be admitted to other colleges and obtain employment.[50]

Judge Bongiovanni concluded the social stigma attached to accused sex offenders is insufficient to support anonymity. She reasoned whether Mr. Doe committed sexual assault is not the issue; the issue is whether the university subjected him to an unfair disciplinary hearing.[51] We are persuaded by Judge Bongiovanni's reasoning as applied to Mr. Doe's unwillingness to disclose his name. The issue is not whether Mr. Doe is an antisemite based on the words he chose to include in his complaint; the issue is whether the University denied him admission to its business school because of his race and "non-Jewish heritage."[52]

Mr. Doe lastly identifies the threat to his physical safety based on Mossad's role in the United States and a claimed risk of poison from a romantic partner as a reasonable fear of severe harm if required to litigate without a pseudonym. We again are not persuaded.

There must be a legitimate threat of physical harm, not "perceived threats or mere frustration voiced by the public."[53] We are persuaded by our colleagues rejecting similar allegations of perceived harm. For example, in *B.L. v. Fetherman*, a parent sued the school district

alleging its curriculum discriminated against white students.[54] The parent moved to proceed under a pseudonym, claiming his portrayal within the community as a "villain" for challenging the school's curriculum and citing threats including a third-party message on LinkedIn making "alarming comments" about his professional life, media outlets identifying the parent and his spouse and where they live and perhaps encouraging vandalism at his home, and an online post purporting to identify the parent's then-college-aged child encouraging people to contact the college to pressure the school to rescind its offer of acceptance.[55] Judge Allen found the parent's "vague reference" to some members of the public's anger with him for filing the lawsuit "amounts to mere frustration rather than a credible risk of harm" because the parent only referred to a "vague possibility of physical harm" and found "a lack of any credible threats of harm based on [parent's] general statements . . . and does not provide any reasonable basis for his fear."[56]

In *Doe v. Felician University*, relied on by Judge Allen, a Muslim woman of Palestinian descent sued Felician University claiming it discriminated against her because of her creed, ancestry, and national origin.[57] Ms. Doe moved to proceed anonymously alleging stalking, cyberbullying, derogatory blog posts, and threats of physical harm by students and faculty at the university. Judge Mannion found "disapproval and frustration voiced by some members of the public on the blog post do not amount to threats" and while the "blog post and comments are filled with hate speech and offensive comments, . . . none of the language create a risk of retaliatory harm and do not threaten Ms. Doe."[58] Judge Mannion concluded Ms. Doe's allegations the specific blog promoted violence against Muslims did not contain promotion of violence either towards all Muslims or Ms. Doe individually and a blog comment "if anyone knows Ms. Doe's identity, [the blogger] will post it on the blog does not qualify as a substantial threat warranting protection."[59]

10

Judge Mannion found no specific credible threat leading him to deny the motion to proceed anonymously.

Judge Allen's and Judge Mannion's reasonings are persuasive. Mr. Doe's speculative allegations regarding Israel's intelligence agency assassinating President Kennedy in 1963, some covert connection to the Epstein scandal, and a speculation a Jewish woman attempted to poison him apparently occurring before Mr. Doe sued the University, are not legitimate threats of physical harm sufficient to meet the first step of *Megless*.

These non-specific, implausible and speculative allegations do not constitute a "reasonable fear of severe harm."[60] Mr. Doe does not meet the first step of the *Megless* test; he alleges he may suffer embarrassment and economic harm which are insufficient under *Megless* and speculative allegations of a risk of murder by Israel's intelligence agency do not constitute a reasonable fear of severe harm.

We may dismiss, as our Court of Appeals did two years ago in *Doe v. University of Pennsylvania*, Mr. Doe's motion to proceed under a pseudonym.[61] But even if Mr. Doe met the first step of the *Megless* test, his reasonable fear of severe harm does not outweigh the public's interest in open litigation under the balancing test outlined by our Court of Appeals in *Megless*.

### B. The balancing of facts does not outweigh the public interest.

Even assuming Mr. Doe met the first step of the *Megless* test, the balance of the *Megless* factors do not outweigh the public's interest in open litigation and access to the judicial process.

Mr. Doe does not specifically address the *Megless* factors weighing in favor or disfavor of anonymity. He argues generally the University will not be prejudiced by allowing him to proceed under a pseudonym, once his name is disclosed the "bell cannot be unrung," the public has an interest solely in the merits of his claim not his name, and the public's interest in open litigation is

outweighed by his "reasonable fear of severe harm" and the "chilling effect" disclosure would have on civil rights litigation generally.[62]

Mr. Doe does not meet his burden to show the six factors favor anonymity under *Megless* when balanced against the three factors disfavoring anonymity. The first factor asks whether the identity of Mr. Doe has been kept confidential. Unlike Judge Marston's case where a person seeking anonymity had already been protected under Pennsylvania's Domestic and Sexual Violence Victim Address Confidentiality Act, Mr. Doe's identity is not confidential nor does he allege it has ever been confidential.[63] This factor does not weigh in favor of anonymity.

The second factor examines the bases upon which disclosure is feared or sought to be avoided and the substantiality of these bases. As analyzed above, there is no reasonable basis for the speculative harms Mr. Doe believes require proceeding anonymously. He articulates a fear of embarrassment through "social stigma" and possible economic harm and an allegation he is at risk for harm based on an implausible theory Israel's intelligence agency is trying to murder him. As explained, our Court of Appeals in *Megless* rejected embarrassment and economic harm as a basis to proceed under a pseudonym and there is no credibly alleged threat of physical harm. For all the reasons analyzed in the first step of the *Megless* test, we conclude this factor does not weigh in favor of anonymity.

The third and fourth factors consider the magnitude of the public's interest in maintaining the confidentiality of Mr. Doe's identity and whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing Mr. Doe's identity. Unlike a victim of sex trafficking, domestic violence, sexual violence or stalking, Mr. Doe does not articulate a public interest in maintaining his confidentiality. Our Court of Appeals requires the plaintiff seeking to proceed anonymously must show if anonymity is denied, "other[s]

12

similarly situated [will] be deterred from litigating claims . . . the public would like to have litigated" to meet the "public interest in maintaining anonymity" factor.[64] Neither the third or fourth factors weigh in favor of anonymity.

The fifth *Megless* factor considers the undesirability of an outcome adverse to Mr. Doe and attributable to his refusal to pursue his case at the price of being publicly identified. Mr. Doe argues denying him leave to proceed anonymously will have a chilling effect on civil rights litigation generally. This conclusion is entirely speculative and does not weigh in favor of anonymity.[65]

The sixth factor considers whether the party seeking to proceed under a pseudonym has illegitimate ulterior motives. Mr. Doe does not address this factor. We have nothing to suggest an illegitimate ulterior motive. This factor is neutral.

The remaining three *Megless* factors disfavor anonymity. It is Mr. Doe's opinion the University will not be prejudiced by allowing him to proceed under a pseudonym, the public has an interest only in the merits of his claims against the University and not his name, and the recognized public interest in open litigation is outweighed by his reasonable fear of severe harm.

Taking the last argument first, for all the reasons fully analyzed, Mr. Doe did not allege facts to support a reasonable fear of severe harm and does not allege facts outweighing the public's interest in open judicial proceedings. Mr. Doe did not show a reasonable fear of severe harm meriting an ***exception*** to "the public's common law right of access to judicial proceedings."[66] The presumption is the public has a right to access judicial proceedings and it is Mr. Doe's burden to show his reasonable fear of severe harm creates an exception. As observed by our Court of Appeals, "the public's interest in open judicial proceedings always runs counter to a litigant's interest in anonymity—the question is whether the interest in anonymity outweighs the public's

interest."[67] Mr. Doe did not make this showing. The "universal level of public interest in access to the identities of litigants" factor weighs against anonymity.

We do not agree with Mr. Doe's speculative argument the University will not be prejudiced by allowing him to proceed anonymously, which we view as related to public access concerns. Mr. Doe points out he already disclosed his identity to the Court in his unilaterally sealed "Notice of Contact Information" and he will provide his identity to the University's counsel for purposes of discovery and litigation.[68] He does not explain how his identity known only to the University's counsel would *not* prejudice the University in discovery and the course of litigation. He speculates his public anonymity (with the exception of the University's counsel) will not cause prejudice. Mr. Doe publicly accuses the University of discriminatory conduct. The University would be prejudiced by requiring it to defend itself publicly against serious accusations of discrimination asserted by Mr. Doe "from behind a cloak of anonymity."[69]

The factors against anonymity support the denial of Mr. Doe's motion. We conclude the balancing of the *Megless* factors mandate we deny Mr. Doe's motion.

## III.   Conclusion

We grant Mr. Doe leave to untimely file his memorandum purporting to show cause responsive to our April 20, 2026 Order. We studied his arguments. Mr. Doe has not shown cause to proceed anonymously. We direct the Clerk of Court to lift Mr. Doe's unilaterally sealed "Notice of Contact Information." Mr. Doe may proceed to serving the University with claims Jewish persons at the University discriminated against him in admission because he is a white non-Jewish male.

---

[1] ECF 1. It appears the same John Doe (or another person sharing his post office box in Los Angeles) tried the same tactic before Judge Burroughs in Boston when suing Harvard University

seeking damages from denying him admission to its business school based on discrimination against him because of his "non-Jewish White ethnic heritage." *Doe v. President and Fellows of Harvard College*, No. 26-10486. As discussed below, Judge Burroughs denied him leave to proceed as a John Doe and denied a stay of her Order pending his anticipated appeal. *See id.* at ECF 23.

[2] ECF 2 at 1. He also filed a unilaterally sealed "Notice of Contact Information" providing the Clerk of Court with his real name and contact information for "the court's records." ECF 7.

[3] ECF 10-1 at 2–6.

[4] *Id.* at 2–3.

[5] *Id.* at 2.

[6] *Id.* at 2–3.

[7] *Id.* at 3.

[8] *Id.* at 4.

[9] *Id.* at 4–5.

[10] *Id.* at 5.

[11] ECF 8.

[12] *Id.*

[13] *Id.*

[14] ECF 10.

[15] ECF 10-1.

[16] *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011), *cert. denied*, 565 U.S. 1197 (2012).

[17] Fed. R. Civ. P. 10(a).

[18] *Megless*, 654 F.3d at 408 (quoting *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 872 (7th Cir. 1997)).

[19] *Id.* (quoting *Does I Thru XXIII v. Advanced Textile Corp.,* 214 F.3d 1058, 1067 (9th Cir. 2000)).

[20] *Id.* Judge Pappert recently allowed a plaintiff alleging a hotel chain violated the Trafficking Victims Protection Reauthorization Act and profited from her alleged sex trafficking to proceed

15

under a pseudonym. *R.F. v. Choice Hotels Int'l, Inc.*, No. 25-1661, 2025 WL 2935249, at *1 n.1 (E.D. Pa. Oct. 14, 2025). Judge Pappert applied our Court of Appeals's *Megless* factors and concluded the plaintiff's name has already been kept confidential, she had a legitimate fear of additional harm if her name became public, the public has an interest in maintaining the confidentiality of sex trafficking victims recognizing courts frequently allow victims of sex trafficking under the Act to proceed using a pseudonym, and nothing suggested plaintiff had illegitimate motives in proceeding anonymously. *Id.* Judge Marson last month allowed a plaintiff to proceed anonymously in an action against her former employer because her address is protected by Pennsylvania's Address Confidentiality Program established by Pennsylvania's Domestic and Sexual Violence Victim Address Confidentiality Act protecting victims of domestic violence, sexual assault, or stalking to have their mail routed through the Program's post office box to maintain confidentiality of the victim's residential address. *See Doe v. Capital Wine & Spirits, Co.*, No. 25-7047, 2026 WL 763300, at *6 (E.D. Pa. Mar. 18, 2026). Judge Marston concluded domestic violence concerns justified the use of a pseudonym. *Id.* at *7. Mr. Doe articulates no such need for protection unlike the victim of sex trafficking and the victim of domestic violence protected by Pennsylvania statute.

[21] *Megless*, 654 F.3d at 408. Examples of areas where the use of a pseudonym is allowed include cases involving "abortion, birth control, transexuality, mental illness, welfare rights of illegitimate children, AIDS, and homosexuality." *Id.*

[22] *Id.* (citations omitted).

[23] For example, in another *Doe v. University of Pennsylvania* case, our Court of Appeals found Doe failed at step one, did not move to a step two analysis, and affirmed Judge Rufe's denial of Doe's motion to proceed under a pseudonym. No. 23-1613, 2024 WL 2575702 (3d Cir. May 24, 2024).

[24] *Megless*, 654 F.3d at 408 (citation omitted).

[25] *Id.* at 409.

[26] *Id.* at 409–10; *Doe v. Coll. of N.J.*, 997 F.3d 489, 495 (3d Cir. 2021) (applying the *Megless* factors).

[27] ECF 10-1 at 1 (citing *Doe v. President and Fellows of Harvard Coll.*, No. 26-10486 (D. Mass. 2026)).

[28] ECF 1 at 4.

[29] *Harvard*, No. 26-10486 at ECF 7.

[30] *Id.* at ECFs 7, 10. Neither the District Court's docket nor a search of the United States Court of Appeals for the First Circuit's docket shows an appeal.

[31] *Id.* at ECF 11.

[32] *Id.* at ECF 23.

[33] *Megless*, 654 F.3d at 408.

[34] *Doe v. Univ. of Pennsylvania*, No. 23-1613, 2024 WL 2575702 (3d Cir. May 24, 2024).

[35] *Doe v. Univ. of Pennsylvania,* No. 22-2689, 2023 WL 12242010 (E.D. Pa. Mar. 23, 2023).

[36] *Id.* at *2.

[37] *Id.*

[38] *Id.* at *2 n.16 (citing *Doe v. Temple Univ.*, No. 14-4729, 2014 WL 4375613, at *2 (E.D. Pa. Sept. 3, 2014); *Doe v. Temple Univ.*, No. 13-5156 (E.D. Pa. Aug. 7, 2014)).

[39] *Does I Thru XXIII v. Advanced Textile Corp.,* 214 F.3d 1058 (9th Cir. 2000).

[40] *Id.* at 1070–71.

[41] *Id.* at 1071.

[42] *Id.*

[43] 237 F.R.D. 545 (D.N.J. 2006).

[44] *Id.* at 550–51.

[45] ECF 10-1 at 4.

[46] *Id.*

[47] *Id.*

[48] Mr. Doe chose the words in his Title VI complaint against the University he concedes are "inflammatory" and may stigmatize him as "antisemitic," "Nazi," or "racist." But these choice of words are not required to state a claim under Title VI. Title VI of the Civil Rights Act prohibits discrimination on the basis of "race, color, or national origin" in "any program or activity" receiving federal funding. 42 U.S.C. § 2000d. To state a claim under Title VI, Mr. Doe must allege he (1) is a member of a protected class; (2) qualified for the benefit or program; (3) suffered an adverse action; (4) under circumstances giving rise to an inference of discrimination. *David v. Neumann Univ.*, 187 F. Supp. 3d 554, 561 (E.D. Pa. 2016). Mr. Doe could have simply alleged facts to plausibly state a claim for Title VI discrimination without the invective he chose to include and now seeks to shield from the public's right to access judicial proceedings.

[49] No. 16-4882, 2018 WL 3756950 (D.N.J. Aug. 7, 2018).

[50] *Id.* at \*4.

[51] *Id.* at \*5 (citing *Megless*, 654 F.3d at 410).

[52] ECF 1 at 4.

[53] *B.L. v. Fetherman*, No. 22-3471, 2023 WL 1818402, at \*4 (D.N.J. Feb. 8, 2023), *aff'd* 2023 WL 3004853 (D.N.J. Apr. 18, 2023) (first quoting *Megless*, 654 F.3d at 410, then citing *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1044 (9th Cir. 2010)).

[54] *Id.* at \*1.

[55] *Id.* at \*1, 4–5.

[56] *Id.* at \*5 (citing *Doe v. Felician Univ.*, No. 18-13539, 2019 WL 2135959, at \*3 (D.N.J. May 15, 2019)).

[57] *Felician Univ.*, 2019 WL 2135959 at \*1.

[58] *Id.* at \*4.

[59] *Id.*

[60] *Megless*, 654 F.3d at 408–09.

[61] *Doe*, 2024 WL 2575702 at \*2.

[62] ECF 10-1 at 6–7.

[63] *Doe v. Main Line Hospitals, Inc.*, No. 20-2637, 2020 WL 5210994 (E.D. Pa. Sept. 1, 2020).

[64] *Doe v. College of New Jersey*, 997 F.3d 489, 495–96 (3d Cir. 2021) (quoting *Megless*, 654 F.3d at 410)). In the *College of New Jersey* case, our Court of Appeals held a denial of a motion to proceed anonymously is appealable under the collateral order doctrine. But our Court of Appeals affirmed the denial on the merits, finding a Jane Doe plaintiff alleging retaliation and employment discrimination based on gender, national origin, and pregnancy did not make a showing in favor of anonymity under the *Megless* factors. *Id.*

[65] Mr. Doe is likely incorrect on this conclusion as well. According to the United States Courts Federal Judicial Caseload Statistics, for the twelve-month period ending March 31, 2024 civil rights filings in the federal district courts based on federal question jurisdiction "increased 13 percent (up 4,481 cases) as cases involving other civil rights rose 14 percent (up 1,876 cases), cases related to employment climbed 21 percent (up 1,772 case), and cases in the category of Americans with Disabilities Act (other) grew 25 percent (up 517 cases.)." *Federal Judicial Caseload Statistics 2024*, United States Courts, https://www.uscourts.gov/data-news/reports/statistical-reports/federal-judicial-caseload-statistics/federal-judicial-caseload-

statistics-2024 [https://perma.cc/KV2E-G7DE]. And because proceeding under a pseudonym is the exception to the rule, there is no basis to assume a "chilling effect" allegedly caused by denials of motions to proceed anonymously where there is an across-the-board increase in civil rights filings.

[66] *College of New Jersey*, 997 F.3d at 495 (quoting *Megless*, 654 F.3d at 408).

[67] *Id.* at 496.

[68] ECF 10-1 at 6. Mr. Doe unilaterally sealed his "Notice of Contact Information" without moving to seal noncompliant with our Policies including under the standards set by our Court of Appeals in *In re Avandia Mktg. Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662 (3d Cir. 2019).

[69] *Doe v. Shakur*, 164 F.R.D. 359, 369 (S.D.N.Y. 1996). In *Shakur*, plaintiff victim of sexual assault sued Tupac Shakur and Charles Fuller for damages. Plaintiff sought to proceed anonymously. Judge Chin denied the motion. Applying factors similar to *Megless*, Judge Chin recognized plaintiff understandably did not want to be publicly identified but concluded her legitimate privacy concerns did not outweigh the public's interest in open judicial proceedings. *Id.* at 361–62. Judge Chin reasoned proceeding anonymously would place Defendant Shakur "at a serious disadvantage, for he would be required to defend himself publicly while plaintiff could make her accusations from behind a cloak of anonymity." *Id.* at 361. Our colleagues within this District and Circuit have adopted Judge Chin's reasoning in denying motions to proceed anonymously. In *Doe v. Court of Common Pleas of Butler Cnty.*, No. 17-1304, 2017 WL 5069333 (W.D. Pa. Nov. 3, 2017), Judge Bissoon denied plaintiff's motion to proceed under a pseudonym where plaintiff alleged a Pennsylvania state court judge offered her a position as a probation officer in exchange for an ongoing sexual relationship. *Id.* at *1. Plaintiff argued disclosure of her identity would expose her and her family to unwanted media attention and potential violence by parolees she supervised. *Id.* Judge Bissoon reasoned Ms. Doe "is not the only party exposed to public humiliation," finding the public claims can "cast a shadow over the defendant's reputation," "may cause damage to their good names and reputation," "'basic fairness generally dictates that plaintiffs who publicly accuse defendants in civil suits 'must [sue] under their real names,'" and defendants should not be made to defend themselves publicly while the plaintiff is "behind a cloak of anonymity." *Id.* at * 3 (quoting *Shakur*, 164 F.R.D. at 361). Judge Bongiovanni similarly reasoned fundamental fairness generally requires plaintiffs to make accusations publicly and it is unfair to allow a plaintiff to accuse a defendant from "behind a cloak of anonymity." *Rider Univ.*, 2018 WL 3756950 at *8 (quoting *Rose v. Beaumont Indep. Sch. Dist.*, 240 F.R.D. 264, 267–68 (E.D. Tex. 2007) (quoting *Shakur*, 164 F.R.D. at 361)). And Judge Marston in *Main Line Hospitals, Inc.*, 2020 WL 5210994, similarly reasoned Main Line Hospitals would be placed at "a serious disadvantage" by having to defend itself publicly while the plaintiff nurse, who alleged the Hospital fired her after learning of her drug addiction in violation of the Americans with Disabilities Act, "could make her accusations behind a cloak of anonymity." *Id.* at *5 (quoting Judge Bissoon's *Court of Common Pleas of Butler County* memorandum which in turn quoted *Shakur*, 164 F.R.D. at 361).