**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| John Doe,<br><br>Plaintiff,<br><br>v.<br><br>The Trustees of the University of Pennsylvania,<br><br>Defendant. | Case No. 2:26-cv-02472-MAK<br><br>Electronically Filed |

**ORDER**

**AND NOW,** this ________ day of _________________________, 2026, after consideration of Defendant The Trustees of the University of Pennsylvania's Motion to Dismiss, or, in the alternative, to Strike Plaintiff's Complaint (the "Motion"), and any response thereto, it is **ORDERED** that the Motion is **GRANTED.**

Plaintiff's Complaint is **DISMISSED WITH PREJUDICE** for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

In the alternative, Plaintiff's scandalous and impertinent allegations, which make up almost the entirety of the Complaint, are **STRICKEN** under Federal Rule of Civil Procedure 12(f), and the Complaint is **DISMISSED WITH PREJUDICE**.

**BY THE COURT:**

_______________________________
Hon. Mark A. Kearney

**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| John Doe,<br><br>Plaintiff,<br><br>v.<br><br>The Trustees of the University of Pennsylvania,<br><br>Defendants. | Case No. 2:26-cv-02472-MAK<br><br>Electronically Filed |

**DEFENDANT THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE PLAINTIFF'S COMPLAINT**

For the reasons set forth in the Memorandum of Law filed concurrently with this Motion, Defendant The Trustees of the University of Pennsylvania moves to dismiss with prejudice Plaintiff John Doe's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. In the alternative, Defendant moves to strike with prejudice the Complaint as it is replete with scandalous and impertinent allegations.

Defendant also seeks such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ James A. Keller*
James A. Keller (PA 78955)
Jesse L. Krohn (PA 313059)
**SAUL EWING LLP**
1735 Market Street, Suite 3400
Philadelphia, PA 19103
(215) 972-1964//7869
James.Keller@saul.com
Jesse.Krohn@saul.com

Date: July 31, 2026

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| John Doe,<br><br>Plaintiff,<br><br>v.<br><br>The Trustees of the University of Pennsylvania.,<br><br>Defendants. | Case No. 2:26-cv-02472-MAK<br><br>Electronically Filed |

**DEFENDANT THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS, OR, IN THE ALTERNATIVE, TO STRIKE PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS


**INTRODUCTION** ..... 1

**ARGUMENT** ..... 2

**I. THE COMPLAINT FAILS TO STATE A CLAIM UNDER TITLE VI.** ..... 2

**A Plaintiff Does Not Allege Conduct Covered by Title VI.** ..... 3

**B The Complaint Does Not Plausibly Allege Intentional Discrimination.** ..... 3

**C Plaintiff's Conspiracy Allegations Cannot Replace Well-Pleaded Facts.** ..... 7

**II. THE COMPLAINT IS RIDDEN WITH SCANDALOUS, IMPERTINENT, AND IMMATERIAL ANTISEMITIC CONSPIRACY ALLEGATIONS AND IT SHOULD BE STRICKEN IN ITS ENTIRETY.** ..... 8

**III. THE COMPLAINT SEEKS INJUNCTIVE RELIEF AND DAMAGES UNAVAILABLE AS A MATTER OF LAW WHICH SHOULD BE, RESPECTIVELY, DISMISSED AND STRICKEN.** ..... 11

**CONCLUSION** ..... 12

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Albright v. Univ. of Cincinnati,* No. 1:26-CV-344, 2026 WL 2110547 (S.D. Ohio July 22, 2026) ....5, 6

*Alexander v. Sandoval*, 532 U.S. 275, 121 S. Ct. 1511, 149 L. Ed. 2d 517 (2001)....3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)....4

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)....4

*Caesar v. Megamillion Biggame Lottery*, 193 F. App'x 119 (3d Cir. 2006)....7

*City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983)....12

*Connelly v. Lane Const. Corp.*, 809 F.3d 780 (3d Cir. 2016)....4, 6

*Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 142 S. Ct. 1562, 212 L. Ed. 2d 552 (2022)....12

*Denton v. Hernandez*, 504 U.S. 25 (1992)....7

*Fritz & Bianculli, LLC v. McCabe*, No. 24-CV-4741-JMY, 2024 WL 7000435 (E.D. Pa. Dec. 13, 2024)....9

*Gallop v. Cheney*, 642 F.3d 364 (2d Cir. 2011)....7

*Katchur v. Thomas Jefferson Univ.*, 354 F. Supp. 3d 655 (E.D. Pa. 2019)....5, 7

*L.L. v. Evesham Twp. Bd. of Educ.*, 710 F. App’x 545 (3d Cir. Sept. 27, 2017)....4

*Landau v. Corp. of Haverford Coll.*, 780 F. Supp. 3d 548 (E.D. Pa. 2025)....3

*Lawrence v. City of Bethlehem*, No. CIV. A. 97-CV-1824, 1998 WL 964214 (E.D. Pa. Oct. 30, 1998)....9

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)....12

*Osei v. La Salle Univ.*, 493 F. App'x 292 (3d Cir. 2012)....4, 7

*Pryor v. Nat'l Collegiate Athletic Ass'n.*, 288 F.3d 548 (3d Cir. 2002)....3

*Roamingwood Sewer & Water Ass'n v. Nat'l Diversified Sales, Inc.*, 509 F. Supp. 3d 198 (M.D. Pa. 2020)....9

*Rzayeva v. United States*, 492 F. Supp. 2d 60 (D. Conn. 2007)....7

*Santiago v. Warminster Twp.*, 629 F.3d 121 (3d Cir. 2010)....................4

*Saravanan v. Drexel Univ.*, No. CV 17-3409, 2017 WL 4532243 (E.D. Pa. Oct. 10, 2017) ....................5, 7

*Satell v. Temple Univ.,* No. 17-2774, 2018 WL 283742 (E.D. Pa. Jan. 3, 2018) ....................4, 5

*Steshenko v. Gayrard*, 70 F. Supp. 3d 979 (N.D. Cal. 2014)....................7

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 143 S. Ct. 2141, 216 L. Ed. 2d 857 (2023) ....................6

*Tatel v. Mt. Lebanon Sch. Dist.*, 637 F. Supp. 3d 295 (W.D. Pa. 2022)....................9

*United States v. Educ. Mgmt. Corp.*, 871 F. Supp. 2d 433 (W.D. Pa. 2012)....................9

*Wagner v. Holtzapple*, 101 F. Supp. 3d 462 (M.D. Pa. 2015) ....................8, 9

**FEDERAL STATUTES**

42 U.S.C. § 2000d....................3

Title VI of the Civil Rights Act of 1964 .................... passim

**STATE STATUTES**

Fed. R. Civ. P. 12(b)(1)....................2

Fed. R. Civ. P. 12(b)(6)....................2, 7, 8, 11

Fed. R. Civ. P. 12(f) ....................2, 8, 10, 11

## INTRODUCTION

Plaintiff John Doe[1] was an unsuccessful applicant to the University of Pennsylvania's renowned Wharton MBA program in 2024. He now brings a single claim under Title VI of the Civil Rights Act of 1964, alleging that the University denied him admission because he is a white, non-Jewish male. Rather than alleging facts showing that any University decisionmaker intentionally discriminated against Doe, the Complaint relies almost entirely on sweeping antisemitic conspiracy theories accusing Jewish people collectively of controlling prestigious universities and pursuing genocidal objectives against non-Jewish people.

Those allegations have no proper place in federal pleading. They are not factual allegations plausibly bearing on the University's admissions process, its decisionmakers, its policies, or Doe's application. They are generalized attacks on an entire community that bear no meaningful relationship to the only question this case presents: whether the University intentionally discriminated against Doe in denying his application. Doe's evident purpose is not to plead a cognizable claim but to inject prejudice, distract from the legal issues, and force the University and this Court to confront inflammatory rhetoric wholly unnecessary to resolving this dispute.

Title VI prohibits intentional discrimination based on race, color, or national origin—not religion alone. To the extent Doe alleges discrimination because he is not Jewish as a matter of religious affiliation, Title VI affords no cause of action. To the extent the Complaint instead attempts to allege discrimination based on race, ancestry, or ethnic characteristics, it still fails

[1] Rule 10(a) requires a complaint to "name **all** the parties" (emphasis added). "Identifying parties to [a] proceeding is an important dimension of publicness." *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011). For the purposes of this motion, and in accordance with the Court's Order of June 12, 2026 (ECF 16) the University will refer to the plaintiff using a pseudonym. In doing so, the University does not concede that he has properly sought to deviate from the requirements of Rule 10; waive its right to contest use of a pseudonym; or suggest that Doe could demonstrate the "exceptional" circumstances required for such relief. *Id.*

because Doe pleads no facts plausibly connecting any protected characteristic to the University's admissions decision. The Complaint identifies no admissions decisionmaker, no discriminatory statement, no admissions policy, no similarly situated comparator, and no facts from which discriminatory intent could reasonably be inferred. Instead, it offers only conclusory accusations and ideological assertions that are not entitled to the presumption of truth under Rule 12(b)(6). Doe's outlandish contentions are so beyond the pale that no amendment could cure them, nor should amendment be permitted.

The Complaint's requested relief is equally defective. Doe seeks categories of damages unavailable under Title VI and extraordinary injunctive relief that would neither redress his alleged injury nor satisfy Article III's standing requirements.

Accordingly, the Court should dismiss Doe's Complaint, with prejudice, pursuant to Rule 12(b)(6). In the alternative, because Doe's Complaint is effectively one long scandalous and impertinent document, the Court should strike it pursuant to Rule 12(f). Finally, if for some reason the Court does not dismiss the Complaint in its entirety, the Court should at a minimum dismiss Doe's requests for injunctive relief under Rule 12(b)(1), and strike the other legally unavailable requests for relief, as well as certain other statements which constitute *ad hominem* attacks rather than factual averments, as detailed below.

## ARGUMENT

### I. THE COMPLAINT FAILS TO STATE A CLAIM UNDER TITLE VI.

Put simply, the Complaint fails to state a claim upon which relief can be granted. It pleads no facts plausibly showing that the University denied Doe admission because of a class or characteristic protected by Title VI.

The Complaint fails for three independent reasons. First, to the extent that Doe alleges discrimination based solely on his religious affiliation, Title VI does not recognize such a claim.

Second, even construing the Complaint as alleging discrimination based on race, color, national origin, or a protected characteristic, Doe fails to plead facts giving rise to a plausible inference of intentional discrimination. Third, Doe cannot overcome those deficiencies by relying on antisemitic conspiracy theories that are unsupported by factual allegations concerning the University's admissions process. The Complaint must be dismissed under Rule 12(b)(6).

### A Plaintiff Does Not Allege Conduct Covered by Title VI.

Doe fails to state a cognizable Title VI claim to the extent he alleges that the University denied him admission because he is not Jewish by religious affiliation.

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin," be excluded from, or denied the benefits of, any federally funded program. 42 U.S.C. § 2000d. The statute reaches only intentional discrimination based on those protected characteristics. *Alexander v. Sandoval*, 532 U.S. 275, 121 S. Ct. 1511, 149 L. Ed. 2d 517 (2001); *Pryor v. Nat'l Collegiate Athletic Ass'n.*, 288 F.3d 548 (3d Cir. 2002). Some courts have held that Title VI applies to discrimination based on Jewish identity when the alleged discrimination is rooted in ***ancestry or ethnicity***. *See e.g.*, *Landau v. Corp. of Haverford Coll.*, 780 F. Supp. 3d 548 (E.D. Pa. 2025). But no court has held that Title VI supports a claim based merely on being non-Jewish, particularly where the complaint alleges no facts implicating ethnicity or national origin, such as Israeli origin.

The Complaint repeatedly alleges that Doe was denied admission because he is "non-Jewish." If Doe means that he was denied admission because he does not practice Judaism, the claim falls outside Title VI's statutory scope. And, even assuming "non-Jewish" refers to race, ancestry, ethnicity, or national origin, the Complaint still fails because it alleges no facts plausibly showing that the University intentionally discriminated against him on any protected basis.

### B The Complaint Does Not Plausibly Allege Intentional Discrimination.

Even if the Court reads the Complaint to allege discrimination based on a characteristic protected by Title VI, Doe still fails to state a claim because he pleads no facts supporting a plausible inference that the University intentionally discriminated against him.

To survive dismissal, a complaint must plead enough factual matter to state a facially plausible claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Although well-pleaded facts are accepted as true, the Court need not credit "[t]hreadbare recitals of the elements of a cause of action" or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The Third Circuit likewise requires courts to separate factual allegations from legal conclusions, disregard conclusory assertions, and then determine whether the remaining facts plausibly state a claim. *Connelly v. Lane Const. Corp.*, 809 F.3d 780 (3d Cir. 2016); *Santiago v. Warminster Twp.*, 629 F.3d 121 (3d Cir. 2010).

In Title VI cases, courts require facts permitting a reasonable inference that the challenged decision was motivated by a protected characteristic. *Osei v. La Salle Univ.*, 493 F. App'x 292 (3d Cir. 2012) (affirming dismissal where the plaintiff alleged discriminatory treatment but pleaded no facts showing the challenged conduct occurred because of race). A plaintiff also must allege different treatment from similarly situated students outside the protected class. *Id.* "To prove a Title VI violation," Plaintiff must demonstrate that "(1) he is a member of a protected class; (2) he was qualified to continue in pursuit of his education; (3) he suffered an adverse action; and (4) such action occurred under circumstances giving rise to an inference of discrimination." *Satell v. Temple Univ.,* No. 17-2774, 2018 WL 283742, *6 (E.D. Pa. Jan. 3, 2018). A plaintiff must allege different treatment from similarly situated students outside the protected class or show "'some additional evidence exists that establishes a causal nexus between the harm suffered and the plaintiff's membership in a protected class, from which a reasonable juror could infer, in light of

common experience, that the defendant acted with discriminatory intent.'" *L.L. v. Evesham Twp. Bd. of Educ.*, 710 F. App'x 545, 548-0 (3d Cir. Sept. 27, 2017) (internal citation omitted).

In *Albright v. Univ. of Cincinnati*, No. 1:26-CV-344, 2026 WL 2110547 (S.D. Ohio July 22, 2026), the Southern District of Ohio dismissed a *pro se* applicant's Title VI claim challenging a graduate-admissions denial. The plaintiff alleged only that he belonged to a protected class, that the university knew it, and that the university denied him admission. *Id.* at *3. Because he pleaded no facts suggesting the denial occurred because of that protected characteristic—such as facts showing he was more objectively qualified than admitted applicants outside his class or that any university official made racially derogatory statements—the court held that his allegations showed only denial plus protected status, not discrimination because of protected status. *Id.* at *4.

Similarly, this Court has held that a student "must allege more than repeated conclusions blaming the [adverse] decision on discriminatory animus." Even a lengthy complaint "rife with scandalous conclusions" will be dismissed without "facts evidencing some plausible basis to proceed" on the theory that the university acted with discriminatory intent or animus. *Saravanan v. Drexel Univ.*, No. CV 17-3409, 2017 WL 4532243 (E.D. Pa. Oct. 10, 2017).

By contrast, dismissal is inappropriate when plaintiffs plead concrete facts tying an admissions decision to discriminatory intent. In *Katchur v. Thomas Jefferson Univ.*, 354 F. Supp. 3d 655 (E.D. Pa. 2019), the court denied dismissal where the plaintiff alleged that an admissions official expressly told her she would have been admitted had she been of a different race. Unlike the conclusory allegations rejected in *Saravanan*, those facts directly connected the admissions decision to race and plausibly supported an inference of intentional discrimination.

The Complaint identifies no admissions decisionmaker, no similarly situated applicant admitted with weaker credentials, no admissions policy, and no statement referencing race or

religion. The assertion that Doe was "rejected due to his White, non-Jewish heritage," along with allegations that the University is "controlled by... genocidal Jewish Supremacists," are not well-pleaded facts about the University's conduct. They are conclusions and ideological assertions entitled to no presumption of truth. *Connelly*, 809 F.3d at 780. Once those conclusions are set aside, the Complaint alleges only that a self-described highly credentialed applicant was denied admission to a selective program, which does not plausibly suggest intentional race discrimination. As in *Albright*, Doe alleges only that the University denied him admission and that he is White and non-Jewish; he pleads no facts showing the denial occurred because of those characteristics. *Albright*, 2026 WL 2110547, at *4.

Doe alleges only that he had exceptional academic credentials, earned a top-one-percent GMAT score, achieved significant professional accomplishments, and was nonetheless denied admission. Even if true, that is also true for many, many applicants to Wharton's celebrated, extremely-selective MBA program. Doe's generalized assertion that his credentials exceeded those of "typical admitted students" does not bridge the pleading gap, because he identifies no similarly situated applicant outside his class who was admitted with weaker qualifications. At most, Doe's allegations reflect Doe's own belief that he was highly qualified. They do not plausibly show that the University's admissions decision was motivated by race, color, national origin, shared ancestry, or ethnic characteristics. Selective admissions programs routinely deny qualified applicants, and a plaintiff's subjective assessment of his qualifications, without more, does not support an inference of unlawful discrimination. *See e.g.*, *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 143 S. Ct. 2141, 216 L. Ed. 2d 857 (2023) (discussing the selective and competitive nature of college admissions).

This case resembles *Osei* and *Saravanan*, not *Katchur*. Like the plaintiffs in those cases, Doe offers only the conclusion that discrimination occurred. He identifies no discriminatory statement, comparator, admissions policy, or factual circumstance linking the denial of his application to a protected characteristic. Instead, he asks the Court to infer intentional discrimination from his asserted qualifications and from ideological theories untethered to the University's admissions process. The Complaint therefore fails to state a plausible Title VI claim.

**C Plaintiff's Conspiracy Allegations Cannot Replace Well-Pleaded Facts.**

Doe also cannot save his Title VI claim by substituting intricate and unfounded antisemitic conspiracy theories for factual allegations about the University's admissions decision.

A court need not accept allegations that are "fantastic" or "irrational and wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *Caesar v. Megamillion Biggame Lottery*, 193 F. App'x 119 (3d Cir. 2006). Nor must a court "entertain pure speculation and conjecture." *Gallop v. Cheney*, 642 F.3d 364 (2d Cir. 2011). Even in the admissions context, a plaintiff alleging a conspiracy must plead a specific agreement, its scope, and each participant's role; conclusory assertions are insufficient. *Steshenko v. Gayrard*, 70 F. Supp. 3d 979 (N.D. Cal. 2014).

Federal courts have applied these principles to reject the type of theory Doe advances. In *Rzayeva v. United States*, 492 F. Supp. 2d 60 (D. Conn. 2007), the court described a complaint alleging a "Jewish Zionist" conspiracy and containing antisemitic slurs as "factually baseless and the product of delusion." *Id.* at 71. The court dismissed the claims under Rule 12(b)(6) and entered judgment in favor of the defendants because the plaintiff pleaded no particular overt acts and no facts showing that the defendants willfully entered into any agreement. *Id.* at 81–82.

The same defect is present here. Rather than pleading facts about the University's admissions process, Doe alleges that Jewish people collectively control prestigious universities, secretly direct admissions decisions, and seek to exclude white, non-Jewish men from positions of influence. The Complaint identifies no participant in the alleged conspiracy, no agreement, no communication, and no factual connection between the alleged conspiracy and the University's decision to deny Doe admission. Most importantly, it alleges no facts showing that any University decisionmaker acted because of Doe's protected status.

The Complaint therefore says little about the University's admissions decision and much about Doe's generalized views concerning Jewish people. Those ideological assertions are not well-pleaded facts and cannot substitute for factual allegations plausibly showing intentional discrimination under Title VI. Accordingly, even if the Court considers every allegation in the Complaint, it fails to state a claim under Rule 12(b)(6) and must be dismissed.

## II. THE COMPLAINT IS RIDDEN WITH SCANDALOUS, IMPERTINENT, AND IMMATERIAL ANTISEMITIC CONSPIRACY ALLEGATIONS AND IT SHOULD BE STRICKEN IN ITS ENTIRETY.

If the Court does not dismiss the entire Complaint under Rule 12(b)(6), it should strike the Complaint (or at least portions of the Complaint) that transform Plaintiff's putative dispute into a vehicle for spewing virulent antisemitic conspiracy theories.

Rule 12(f) authorizes a court to strike "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Immaterial" matter is that which "has no essential or important relationship to [any] claim[s] for relief." *Wagner v. Holtzapple*, 101 F. Supp. 3d 462, 488 (M.D. Pa. 2015) (citing *Del. Health Care, Inc. v. MCD Holding Co.*, 893 F. Supp. 1279 (D. Del. 1995)). "Impertinent" matter consists of "statements that do not pertain, and are not necessary, to the issues in question." *Id.* (citation omitted). And "scandalous" matter is that which reflects

cruelly upon the other party's moral character, "casts a derogatory light on someone, uses repulsive language, or detracts from the dignity of the court." *Id.* (citing *Carone v. Whalen*, 121 F.R.D. 231, 232 (M.D. Pa. 1988)); *Fritz & Bianculli, LLC v. McCabe*, No. 24-CV-4741-JMY, 2024 WL 7000435 (E.D. Pa. Dec. 13, 2024)); *Tatel v. Mt. Lebanon Sch. Dist.*, 637 F. Supp. 3d 295 (W.D. Pa. 2022); *Lawrence v. City of Bethlehem*, No. CIV. A. 97-CV-1824, 1998 WL 964214, at *4 (E.D. Pa. Oct. 30, 1998).

Although motions to strike are generally disfavored, they serve an important function by eliminating allegations that needlessly prejudice the parties, confuse the issues, and divert litigation into matters having no legitimate bearing on the claims presented. *See United States v. Educ. Mgmt. Corp.*, 871 F. Supp. 2d 433, 460 (W.D. Pa. 2012) (citation omitted); *Roamingwood Sewer & Water Ass'n v. Nat'l Diversified Sales, Inc.*, 509 F. Supp. 3d 198, 204 (M.D. Pa. 2020). This is one of those exceptional cases, and it is impossible to parse out one hateful section of the Complaint from another.

The Complaint repeatedly alleges that Jewish people collectively are "genocidal Jewish supremacists," that they seek to "exterminate and enslave all non-Jews," that they secretly control prestigious educational institutions, and that they collectively prevent non-Jewish white men from obtaining positions of influence. The Complaint further attributes broad societal, political, and military objectives to Jewish people as a whole and includes graphic and degrading rhetoric having no conceivable connection to Plaintiff's admissions decision, such as, among many other examples, "[t]he Jewish Supremacists allow queers because queers have underdeveloped character rendering them easily controllable by the Jews," or "non-Jewish White males [must] demonstrate a willingness to get "f-----[2] up the ass…."

[2] The actual, full obscenity is used in Plaintiff's Complaint.

These allegations are plainly scandalous. They do not criticize conduct allegedly undertaken by the University or by identified University officials. They instead level sweeping accusations against an entire community through language that is repulsive, inflammatory, and wholly foreign to the resolution of any legal issue before the Court.

Nor are these allegations material or pertinent to Plaintiff's Title VI claim. The Complaint does not allege that any admissions officer made anti-White statements, that any decisionmaker expressed discriminatory animus, that any admissions policy classified applicants by race or ancestry, or that any identified individual acted because of Plaintiff's protected characteristics. Instead, the Complaint, to the extent it can be said to have any coherent thread, attempts to bridge that evidentiary gap by asserting an overarching conspiracy involving Jewish people generally. Such generalized ideological accusations are not factual allegations concerning the University's conduct or Plaintiff's status and therefore have no meaningful relationship to the factual questions the Court must resolve under Title VI.

Permitting these allegations to remain would also cause cognizable prejudice. They baselessly make, and associate the University with, debunked and offensive accusations of genocide, racial supremacy, enslavement, and sexual degradation. They obscure the narrow legal issue—whether the University intentionally denied Doe admission because of protected class—and threaten to turn discovery into an inquiry concerning Plaintiff's expansive ideological theories rather than the actual admissions decision. Rule 12(f) exists to prevent precisely that kind of distortion and unnecessary burden.

Accordingly, the Court should strike the Complaint in its entirety, as it is permeated by these outrageous statements. At a minimum, the Court should strike the most inflammatory allegations. The University is reluctant to reproduce the Complaint's language and does so only to

identify with precision the allegations it asks this Court to strike, should the Court not be willing to strike the Complaint in its entirety. Because the Complaint contains no numbered paragraphs, the University requests that the Court strike the following quoted statements:

- "The Jews are a racial supremacist organization whose stated goal is to exterminate and enslave all non-Jews."
- "The Jews believe non-Jewish white males are the only demographic with the willingness and agency to mount a defense against their genocidal objectives."
- "Indeed, no group has sacrificed so much as non-Jewish white males to end slavery and genocide."
- "As a result, Jewish Supremacists have effectively barred non-Jewish white males from prestigious educational programs to keep them from attaining positions of power that may be used to obstruct the genocidal Jewish Supremacists."
- "The University [], like all prestigious educational institutions, is controlled by the genocidal Jewish supremacists."
- "There are just two exceptions to the ban on non-Jewish white males: those who are queer and those who are veterans."
- "The Jewish Supremacists allow queers largely because queers have underdeveloped character rendering them easily controllable by the Jews."
- "The Jewish Supremacists allow veterans to incentivize non-Jewish whites to work in the armed forces, whose sole objective is to serve the Jewish Supremacists."
- "Requiring non-Jewish white males to demonstrate a willingness to 'die4israel' (or at least a willingness to get f***** up the a**) is an obvious violation of Title VI."

Each identified statement should be stricken because it is an *ad hominem* attack that baselessly slanders Jewish people, members of the LGBTQ community, and/or veterans through repulsive and degrading language, contributes no factual content regarding the University's admissions decision pertaining to Plaintiff, and serves no apparent purpose other than to inflame and to prejudice. The Court should not require the University to answer such matter or permit it to remain as part of the pleadings in this action.

## III. THE COMPLAINT SEEKS INJUNCTIVE RELIEF AND DAMAGES UNAVAILABLE AS A MATTER OF LAW WHICH SHOULD BE, RESPECTIVELY, DISMISSED AND STRICKEN.

Finally, if the Court declines to dismiss the Complaint under Rule 12(b)(6) or strike it in its entirety under Rule 12(f), it should nevertheless narrow the issues for litigation by dismissing Plaintiff's requests for injunctive relief and striking his request for emotional distress damages. Plaintiff lacks Article III standing to pursue the extraordinary injunctive relief requested because he alleges only a completed injury and does not plausibly allege an ongoing or imminent injury that would be redressed by the requested injunctions. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992); *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983). In addition, Plaintiff's request for emotional distress damages are foreclosed by *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 142 S. Ct. 1562, 212 L. Ed. 2d 552 (2022) (emotional distress damages unavailable under Spending Clause statutes, including Title VI).

Accordingly, even if the Court permits some portion of the Complaint to proceed, it should dismiss Plaintiff's requests for preliminary and permanent injunctive relief and strike Plaintiff's request for emotional distress damages.

**CONCLUSION**

For the foregoing reasons, the University respectfully requests that the Court dismiss the Complaint in its entirety under Rule 12(b)(6). Because the Complaint's core premise is not one that additional pleading could render plausible, the dismissal should be with prejudice and without leave to amend. In the alternative, the University respectfully requests that the Court strike the scandalous allegations and emotional distress damages under Rule 12(f) and dismiss the injunctive-relief claims under Rule 12(b)(1). The University further requests such other relief as the Court deems just.

Respectfully submitted,

*/s/ James A. Keller*

James A. Keller (PA 78955)
Jesse L. Krohn (PA 313059)
**SAUL EWING LLP**
1735 Market Street, Suite 3400
Philadelphia, PA 19103
(215) 972-1964//7869
James.Keller@saul.com
Jesse.Krohn@saul.com

*Counsel for Defendant*

Dated: July 31, 2026

**<u>CERTIFICATE OF SERVICE</u>**

I, James A. Keller, hereby certify that I electronically filed the foregoing Motion to Dismiss and Memorandum of Law with the Clerk of the Court for the United States District Court for the Eastern District of Pennsylvania by using the CM/ECF system. I certify that Plaintiff has been served with the documents at his listed address:

John Doe
PO Box 151133
Los Angeles, CA 90015

Respectfully submitted,

*/s/ James A. Keller*

James A. Keller (PA 78955)
Jesse L. Krohn (PA 313059)
**SAUL EWING LLP**
1735 Market Street, Suite 3400
Philadelphia, PA 19103
(215) 972-1964//7869
James.Keller@saul.com
Jesse.Krohn@saul.com

*Counsel for The Trustees of the University of Pennsylvania*

Dated: July 31, 2026