**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| John Doe,<br><br>Plaintiff,<br><br>v.<br><br>The Trustees of the University of Pennsylvania,<br><br>Defendant. | Case No. 2:26-cv-02472-MAK<br><br>Electronically Filed |

**ORDER**

**AND NOW,** this ________ day of __________________________, 2026, after consideration of Defendant The Trustees of the University of Pennsylvania's Motion to Dismiss Plaintiff John Doe's First Amended Complaint (the "Motion"), and any response thereto, it is **ORDERED** that the Motion is **GRANTED.**

Plaintiff's First Amended Complaint is **DISMISSED WITH PREJUDICE** for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

**BY THE COURT:**

_________________________________

Hon. Mark A. Kearney

**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| John Doe,<br><br>Plaintiff,<br><br>v.<br><br>The Trustees of the University of Pennsylvania,<br><br>Defendants. | Case No. 2:26-cv-02472-MAK<br><br><br><br>Electronically Filed |

**DEFENDANT THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA'S MOTION TO DISMISS PLAINTIFF JOHN DOE'S FIRST AMENDED COMPLAINT**

For the reasons set forth in the Memorandum of Law filed concurrently with this Motion, Defendant The Trustees of the University of Pennsylvania moves to dismiss with prejudice Plaintiff John Doe's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

Defendant also seeks such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ James A. Keller*

James A. Keller (PA 78955)
Jesse L. Krohn (PA 313059)
**SAUL EWING LLP**
1735 Market Street, Suite 3400
Philadelphia, PA 19103
(215) 972-1964//7869
James.Keller@saul.com
Jesse.Krohn@saul.com

Date: September 14, 2026

**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| John Doe,<br><br>Plaintiff,<br><br>v.<br><br>The Trustees of the University of Pennsylvania.,<br><br>Defendants. | Case No. 2:26-cv-02472-MAK<br><br><br><br>Electronically Filed |

**DEFENDANT THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA'S
MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF JOHN DOE'S FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..... 1

ARGUMENT ..... 1

I. COUNTS I AND II FAIL TO STATE A CLAIM FOR RACE DISCRIMINATION UNDER TITLE VI OR SECTION 1981. ..... 2

A. The FAC Pleads No Facts Plausibly Connecting Plaintiff's Rejection to Racial Discrimination. ..... 3

B. Plaintiff's Allegations Concerning The University's General Admissions Practices Do Not Supply the Missing Nexus. ..... 6

II. COUNT III FAILS TO STATE A CLAIM UNDER TITLE IX. ..... 9

A. Wharton's Request That Applicants Identify Their Sex Does Not Support an Inference of Discrimination in Admissions. ..... 11

B. Alleged Participation in the Forté Fellowship Program Does Not Support an Inference of Discrimination in Admissions. ..... 12

C. Wharton's LGBTQ+ Programming Likewise Does Not Support an Inference of Discrimination in Admissions. ..... 13

III. THE FAC SHOULD BE DISMISSED WITH PREJUDICE. ..... 14

IV. ALTERNATIVELY, PLAINTIFF LACKS STANDING TO SEEK DECLARATORY OR INJUNCTIVE RELIEF. ..... 14

CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Albright v. University of Cincinnati*,

2026 WL 2110547 (2026)....................5

*Ashcroft v. Iqbal*,

556 U.S. 662 (2009)....................1

*Bell Atlantic Corp. v. Twombly*,

550 U.S. 544 (2007)....................1

*Bostock v. Clayton County*,

590 U.S. 644 (2020)....................10

*City of Los Angeles v. Lyons*,

461 U.S. 95, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983)....................15

*Connelly v. Lane Const. Corp.*,

809 F.3d 780 (3d Cir. 2016)....................1

*Cruz v. Seton Hall Univ.*,

2012 WL 13322671 (D.N.J. July 10, 2012)....................10

*Cummings v. Premier Rehab Keller, P.L.L.C.*,

596 U.S. 212, 142 S. Ct. 1562, 212 L. Ed. 2d 552 (2022)....................15

*Doe v. Univ. of Scis.*,

961 F.3d 203 (3d Cir. 2020)....................10

*Fowler v. UPMC Shadyside*,

578 F.3d 203 (3d Cir. 2009)....................1

*Grabowski v. Arizona Board of Regents*,

69 F. 4th 1110 (9th Cir. 2023)....................10

*Grayson v. Mayview State Hosp.*,

293 F.3d 103 (3d Cir. 2002)....................14

*In re New Jersey Title Ins. Litig.*,

683 F.3d 451 (3d Cir. 2012)....................1

*Katchur v. Thomas Jefferson University*,

354 F. Supp. 3d 655 (E.D. Pa. 2019)....................5

*L.L. v. Evesham Twp. Bd. of Educ.*,

710 F. App'x 545 (3d Cir. Sept. 27, 2017)....................2

*Landau v. Corp. of Haverford Coll.*,

780 F. Supp. 3d 548 (E.D. Pa. 2025)....................3

*Lujan v. Defs. of Wildlife*,

504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)....................15

*Osei v. La Salle University*,

493 F. App'x 292 (3d Cir. 2012)....................4, 9

*Phillips v. Cnty. of Allegheny,*

515 F.3d 224 (3d Cir. 2008)....................14

*Pryor v. Nat'l Collegiate Athletic Ass'n*,

288 F.3d 548 (3d Cir. 2002)....................2

*Santiago v. Warminster Twp.*,

629 F.3d 121 (3d Cir. 2010)....................1

*Saravanan v. Drexel Univ.*,

2017 WL 4532243 (E.D. Pa. Oct. 10, 2017)....................2, 9

*Saravanan v. Drexel Univ.*,

2017 WL 5659821 (E.D. Pa. Nov. 24, 2017)....................2

*Schmidt v. Skolas*,

770 F.3d 241 (3d Cir. 2014)....................4

*Shropshire v. Wheeler*,

858 F. App'x 580 (3d Cir. 2021)....................3, 6

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,

600 U.S. 181, 143 S. Ct. 2141, 216 L. Ed. 2d 857 (2023)....................6, 8

*Tingley-Kelley v. Trustees of University of Pennsylvania*,

677 F. Supp. 2d 764 (E.D. Pa. 2010)
....................12

*W. Virginia v. B. P. J. by Jackson*,

146 S. Ct. 2356, 225 L. Ed. 2d 1040 (2026)....................10

**FEDERAL STATUTES**

34 C.F.R. § 106.21....................11

20 U.S.C. § 1681(a)....................10

42 U.S.C. § 1981.................... passim

42 U.S.C. § 2000d....................3

**EXECUTIVE ORDERS**

Exec. Order No. 14618, 90 FR 8615 *Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*....................10

**RULES**

Fed. R. Civ. P. 12(b)(6)....................14

## INTRODUCTION

Plaintiff John Doe's First Amended Complaint ("FAC") (ECF 27) opens with a sweeping accusation: the admissions practices of the University of Pennsylvania ("University") "confer advantage on applicants of Jewish ancestry, homosexuals, and females, thereby disadvantaging non-Jewish White heterosexual males." FAC ¶ 2. In his original Complaint (ECF 1), Plaintiff attributed this to the University being "controlled by the genocidal Jewish Supremacists." Plaintiff has abandoned some of this rhetoric in his FAC, but to no avail. In fact, with that inflammatory obfuscation out of the way, it is clear that Plaintiff cannot, and in his FAC does not, plead any facts plausibly showing that the University denied Plaintiff admission to the Wharton MBA program because of his race, sex, or sexual orientation. As such, he does not plausibly assert claims under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 1981, or Title IX of the Education Amendments of 1972. The FAC should be dismissed, with prejudice.

## ARGUMENT

To survive dismissal, a complaint must plead enough factual matter to state a facially plausible claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Although well-pleaded facts are accepted as true, the Court need not credit "[t]hreadbare recitals of the elements of a cause of action" or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The Third Circuit likewise requires courts to separate factual allegations from legal conclusions, disregard conclusory assertions, and then determine whether the remaining facts plausibly state a claim. *Connelly v. Lane Const. Corp.*, 809 F.3d 780 (3d Cir. 2016); *Santiago v. Warminster Twp.*, 629 F.3d 121 (3d Cir. 2010). A complaint must "show" an entitlement to relief with its facts, not merely allege it. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). A complaint should be dismissed with prejudice when amendment would be futile. *See In*

*re New Jersey Title Ins. Litig.*, 683 F.3d 451, 462 (3d Cir. 2012) (court need not permit amendment if inequitable or futile).

## I. COUNTS I AND II FAIL TO STATE A CLAIM FOR RACE DISCRIMINATION UNDER TITLE VI OR SECTION 1981.

Counts I and II should be dismissed because the FAC does not plead facts supporting a plausible inference that the University denied Plaintiff's application to the Wharton MBA program due to his race.

Title VI provides that no person shall "on the ground of race, color, or national origin" be "subject to discrimination under any program or activity receiving Federal financial assistance." "To show a prima facie Title VI claim, [plaintiff] must plead he was a member of a protected class qualified for the educational benefit or program at issue and he suffered an adverse action occurring under circumstances giving rise to an inference of discrimination." *Saravanan v. Drexel Univ.*, 2017 WL 5659821, at *8 (E.D. Pa. Nov. 24, 2017) [hereinafter *Saravanan II*] (quotation marks and citation omitted); *see also Saravanan v. Drexel Univ.*, 2017 WL 4532243 (E.D. Pa. Oct. 10, 2017) [hereinafter *Saravanan I*]. A viable Title VI claimant must allege different treatment from similarly situated individuals outside the protected class, or show "'some additional evidence exists that establishes a causal nexus between the harm suffered and the plaintiff's membership in a protected class, from which a reasonable juror could infer, in light of common experience, that the defendant acted with discriminatory intent.'" *L.L. v. Evesham Twp. Bd. of Educ.*, 710 F. App'x 545, 548-0 (3d Cir. Sept. 27, 2017) (internal citation omitted).

Similarly, to establish a right to relief under Section 1981, a plaintiff must show (1) that he belongs to a protected class; (2) "an intent to discriminate on the basis of race by the defendant"; and (3) "discrimination concerning one or more of the activities enumerated in § 1981, including the right to make and enforce contracts." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548,

569 (3d Cir. 2002) (quotation marks and citation omitted). "The standard for establishing an intent to discriminate on the basis of race is identical in the Title VI and § 1981 contexts." *Id.* (citation omitted). A plaintiff does not satisfy that standard merely by noting his race, alleging that he experienced an adverse decision, and baldly asserting that the two are connected. *See Shropshire v. Wheeler*, 858 F. App'x 580, 583–84 (3d Cir. 2021) (affirming dismissal where plaintiff's allegations did not contain factual material from which discrimination could plausibly be inferred and holding that the district court therefore was not required to allow discovery).

**A. The FAC Pleads No Facts Plausibly Connecting Plaintiff's Rejection to Racial Discrimination.**

The FAC pleads no facts plausibly connecting the rejection of Plaintiff's application for admission to Wharton to intentional discrimination based on his race (White).[1] Plaintiff alleges that he submitted his application on April 2, 2024, and that the University denied admission without an interview on April 19, 2024. FAC ¶¶ 19, 24. Plaintiff avers that his GMAT score placed him in the top one percent of test takers. FAC ¶ 20. At the same time, Plaintiff acknowledges that his undergraduate GPA was "below that of the average admit to the Wharton MBA program."

[1] As noted, the FAC contains no factual allegations whatsoever going to show that Wharton favored applicants of Jewish ancestry in the 2023-24 admissions cycle and for this reason, we do not further address the theory that Plaintiff was discriminated against for being "non-Jewish." To the extent that Plaintiff's characterization of himself as "non-Jewish" is intended to assert discrimination based on religion, Title VI does not prohibit discrimination on the basis of religion, and § 1981 does not create a general cause of action for religious discrimination. *See* 42 U.S.C. §§ 1981, 2000d. Some courts have held that Title VI applies to discrimination based on Jewish identity when the alleged discrimination is rooted in ancestry or ethnicity. *See e.g.*, *Landau v. Corp. of Haverford Coll.*, 780 F. Supp. 3d 548 (E.D. Pa. 2025). But, no court has held that Title VI supports a claim based merely on being "non-Jewish," particularly where the complaint alleges no facts implicating ethnicity or national origin, such as Israeli origin. If Plaintiff is asserting that he was denied admission because he does not practice Judaism, the claim falls outside the statutory scope of Title VI and Section 1981. And, even if "non-Jewish" was construed to refer to race, ancestry, ethnicity, or national origin, the FAC still fails because it alleges no facts of this nature.

FAC ¶ 21.[2] Moreover, admission to a highly selective academic program does not turn on a single favorable credential. Plaintiff's own allegations establish that Wharton sought information beyond test scores and grades, including applicants' personal, professional, and academic backgrounds, community honors, extracurricular activities, and community engagements. FAC ¶ 54. Plaintiff's allegation that he was not admitted despite an exceptional GMAT score therefore does not plausibly support an inference that race—rather than the comparative assessment of his application as a whole—explains why he was not admitted.

Plaintiff also identifies no similarly situated applicant of another race who was admitted to Wharton in the same application cycle. He identifies no discriminatory statement by an admissions official. He alleges no departure from Wharton's ordinary admissions procedures in reviewing his application. He does not identify any person who evaluated his application and allegedly harbored racial bias. In fact, Plaintiff expressly admits that he does not know "the criteria applied to Plaintiff's application, the identity of the persons who evaluated it, or what information within it was before those persons." FAC ¶ 25.

That concession exposes the central defect of Counts I and II, and should be dispositive. Plaintiff does not allege facts showing why his application was denied: rather, he alleges that he does not know why it was denied and seeks discovery into the University's admissions processes in order to find out. But, lack of information is not affirmative support for an inference of discrimination. The pleading standard requires "some nexus between the adverse action suffered and the disparate treatment" before discovery begins. *Osei v. La Salle University*, 493 F. App'x

[2] Plaintiff did not append a copy of the application he says was unfairly rejected to the FAC, and the University is not able to do so because Plaintiff's identity is currently unknown to the University. A plaintiff should not be able to "evade accountability" by omitting a "document integral to or explicitly relied upon in the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249-50 (3d Cir. 2014).

292, 296 (3d Cir. 2012). Otherwise, just about every disappointed applicant could utilize our federal court system to gain insight into why they did not get admission to their preferred higher education institution or program. That is not tenable, and is not the law.

*Katchur v. Thomas Jefferson University*, 354 F. Supp. 3d 655 (E.D. Pa. 2019), is instructive. In *Katchur*, the rejected applicant alleged that the defendant university's Director of Admissions told her directly that she would have been admitted if she were African American, encouraged her to obtain genetic testing to identify minority ancestry that could improve her admissions prospects, and discussed another applicant who allegedly benefited from doing so. *Id.* at 666–68. Those allegations directly connected race to the challenged admissions decision, and were therefore sufficient to support a plausible inference of discrimination at the motion to dismiss stage. By contrast, in *Albright v. University of Cincinnati*, No. 1:26-CV-344, 2026 WL 2110547 (S.D. Ohio July 22, 2026), the Southern District of Ohio dismissed a *pro se* applicant's Title VI claim challenging a graduate admissions denial where the plaintiff alleged only that he belonged to a protected class, that the university knew it, and that the university denied him admission. *Id.* at *3. Because he pleaded no plausible facts suggesting the denial occurred because of that protected characteristic—such as facts showing he was more objectively qualified than admitted applicants outside his class or that any university official made racially derogatory statements—the court held that his allegations showed only denial plus protected status, not discrimination because of protected status. *Id.* at *4.

Plaintiff's complaint is exactly like *Albright*, and nothing like *Katchur*. Unlike the plaintiff in Katchur, Plaintiff identifies no statement by an admissions official, comparator, policy, or other fact directly linking race to the denial of his application. He instead asks the Court to infer racially discriminatory intent from nothing more than his rejection, and then permit a fishing expedition to

see if that inference is true. The Federal Rules of Civil Procedure do not permit this. *See, e.g., Shropshire*, 2021 WL 2287509 at *3–4. Even when information relevant to a claim is principally within a defendant's possession, a plaintiff must still plead facts making the asserted claim plausible; conclusory allegations do not become sufficient merely because discovery might uncover additional information. *Id.*

Here, Plaintiff has identified his race, and he has noted an adverse admissions result at Wharton. What he has not pled is any factual connection between the two. Counts I and II are facially deficient and should be dismissed.

**B. Plaintiff's Allegations Concerning The University's General Admissions Practices Do Not Supply the Missing Nexus.**

Unable to identify facts about his own situation that even remotely suggest race discrimination, Plaintiff devotes much of his FAC to purported historical admissions practices at other universities, public statements, demographic information, and other factoids that have no connection to his rejection. None of these supplies a plausible nexus between Plaintiff's race and an highly selective academic institution's decision to deny him admission.

To this end, Plaintiff first spends eleven paragraphs recounting the history of admissions practices at Harvard, Yale, and Princeton. FAC ¶¶ 8–18. These allegations are irrelevant to admissions practices at the University of Pennsylvania. Whatever their historical significance, allegations concerning practices adopted by other universities decades ago do not plausibly establish the intent of the University decisionmakers evaluating Plaintiff's application in April 2024.

Plaintiff next alleges that the University did not make appropriate changes to its admissions practices in light of the Supreme Court's decision in *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 143 S. Ct. 2141, 216 L. Ed. 2d 857 (2023) ("*SFFA*").

He points to the University's "Common Data Set" for 2022–23, which identified "Racial/ethnic status" as a factor "Considered" in first-year undergraduate admission decisions. FAC ¶¶ 29–31. But Plaintiff did not apply for undergraduate admission to the University, and he did not apply during the 2022–23 admissions cycle: he applied to the Wharton MBA program during the 2023–24 cycle. FAC ¶ 19. Moreover, the Supreme Court decided *SFFA* on June 29, 2023, before which time there was nothing inherently suspect in a university acknowledging the mere consideration of race in admissions, without more. FAC ¶ 32. Plaintiff alleges that the University responded to the *SFFA* decision by immediately announcing that the decision would "require changes in [the University's] admissions practices." FAC ¶¶ 33–34. Plaintiff does not allege that the University failed to make changes, but instead relies principally on an assertion that the University has not publicly explained precisely what it changed, when each change took effect, or how its internal procedures operate. FAC ¶¶ 36–39.

First, Plaintiff does not allege, nor could he, that the University had some affirmative obligation to advise him of how it was evaluating the *SFFA* decision. But, in any event, Plaintiff's own allegations undercut any suggestions that the University has implemented *SFFA* in a discriminatory way. Plaintiff alleges that, before *SFFA*, the University's graduate application disclosure stated that demographic information would be used in part "to facilitate selection of a diverse student body" and referred expressly to "race and/or ethnicity." FAC ¶ 47. He then alleges that, for the **2023–24 admissions cycle in which he applied**, the University removed both statements. FAC ¶ 48. He further acknowledges that the application he filled out stated that disclosure of demographic information was voluntary, and that answering or declining to answer those questions "would not influence the University's decision on admission." FAC ¶ 49.

The facts Plaintiff actually pleads show that: a) *SFFA* was decided before he applied; b) the University announced that it would change its admissions practices in response; and c) the University indeed altered its graduate application materials for the admissions cycle during which Plaintiff submitted an application. Plaintiff's rank speculation that the University might nevertheless have continued to consider race in admissions, because the University theoretically has not publicly disclosed every aspect of its internal decision-making process, does not constitute a plausible claim of discrimination against anyone, let alone against Plaintiff.

Plaintiff's allegations concerning the University's collection of demographic and biographical information fare no better. He alleges that Wharton continued to collect optional ethnicity information after *SFFA*, and that the pertinent application also "solicited" information concerning an applicant's background from which race might potentially be inferred. FAC ¶¶ 51, 54–56. This argument falls flat. The mere ability to know or somehow "infer" an applicant's race does not suggest the use of race as an admissions criterion, as *SFFA* itself makes clear. 600 U.S. at 230–31 (permitting consideration of an application in which the candidate for admission discusses their race, so long as the applicant is "treated based on his or her experiences as an individual – not on the basis of race").

The University's public reporting of demographic data also fails to support Plaintiff's theory. The FAC alleges that the University did not publish a final year-over-year comparison of racial demographic data as between 2022-2023 and 2023-2024, and now publishes "less information than the school-level data Wharton had previously made publicly available." FAC ¶¶ 40–44. But, Plaintiff acknowledges that the University is not required to disclose such data, FAC ¶ 46, and offers no facts connecting the University's decisions about what data to publish to the evaluation of his application, or explaining why those decisions make it more plausible that the

University discriminated against him because he is White. At most, those allegations reflect Plaintiff's dissatisfaction with the amount of admissions-related information the University makes publicly available. They do not come close to plausibly pleading discriminatory intent.

Finally, Plaintiff's allegations concerning the Howard E. Mitchell Fellowship are unavailing. Plaintiff alleges that he has seen the Fellowship described on a "corporate and recruiter website" as "a pooled fund for exceptional students from underrepresented backgrounds." FAC ¶ 59. Plaintiff acknowledges that "Wharton's current MBA financial aid materials do not describe the Howard E. Mitchell Fellowship or its eligibility criteria," and instead "describe a Wharton Fellowship Program for which **all admitted students** are considered…." FAC ¶ 62 (emphasis added). The FAC does not allege that Plaintiff applied for and was denied the Howard E. Mitchell Fellowship, that the criteria referenced on the "corporate and recruiter website" governed during his admissions cycle, or that eligibility for any fellowship played a role in determining whether an applicant was admitted to Wharton in the first place. These allegations do not plausibly connect Plaintiff's race to the denial of his MBA application.

In sum, none of Plaintiff's assertions supply what Counts I and II require: facts plausibly showing that the University used Plaintiff's race against him when it denied his application. See *Osei*, 493 F. App'x at 296; *Saravanan I*, 2017 WL 4532243 at *1 (finding that a student "must allege more than repeated conclusions blaming the [adverse] decision on discriminatory animus"). Counts I and II should be dismissed, with prejudice.

## II. COUNT III FAILS TO STATE A CLAIM UNDER TITLE IX.

Count III should likewise be dismissed because the FAC pleads no facts supporting a plausible inference that the University denied Plaintiff's application to the Wharton MBA program

due to his sex or sexual orientation.[3] Title IX provides that no person shall, "on the basis of sex," be excluded from participation in, denied the benefits of, or subjected to discrimination under an education program or activity receiving federal financial assistance. 20 U.S.C. § 1681(a). The Third Circuit applies a "straightforward pleading standard" to Title IX discrimination claims: the alleged facts, if true, must support a plausible inference that a federally funded educational institution discriminated against the plaintiff on the basis of sex. *Doe v. Univ. of Scis.*, 961 F.3d 203, 209 (3d Cir. 2020).

The FAC does not satisfy this standard. Plaintiff alleges that he is male and that the University denied his application. FAC ¶¶ 24, 90. But, just as with his race discrimination claims, Plaintiff identifies no factual nexus between those two allegations. He identifies no female applicant with comparable qualifications who was admitted, no statement reflecting sex-based bias, no admissions policy favoring women, and no allegation that any individual evaluating his application treated his sex as a factor in deciding whether to admit him. Plaintiff's allegations of

---

[3] It should be noted that there is not currently precedential case law establishing that Title IX's protections extend to discrimination based on sexual orientation. While some federal circuits have so held, *e.g.*, *Grabowski v. Arizona Board of Regents*, 69 F. 4th 1110, 1118 (9th Cir. 2023), neither the United States Supreme Court nor our Third Circuit have ruled on this issue. There is also District Court caselaw in the Third Circuit to the contrary, *Cruz v. Seton Hall Univ.*, 2012 WL 13322671, at *5 (D.N.J. July 10, 2012), although *Cruz* was admittedly decided before the Supreme Court's decision in *Bostock v. Clayton County*, 590 U.S. 644 (2020), which determined that Title **VII**'s protections extend to discrimination based on sexual orientation. In any event, there is an ongoing dispute as to whether *Bostock's* holding should apply to Title IX. The current President of the United States does not think so. *See* Exec. Order No. 14618, 90 FR 8615, 8616, *Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, directing federal agencies to "correct the misapplication of the Supreme Court's decision in Bostock v. Clayton County (2020)" to Title IX. And, in a somewhat different context, the Supreme Court very recently issued an opinion suggesting that "sex" in Title IX means nothing more than that. *W. Virginia v. B. P. J. by Jackson*, 146 S. Ct. 2356, 225 L. Ed. 2d 1040 (2026) (holding that "the term 'sex'" as used in the Title IX statute "cannot plausibly be interpreted to refer to anything other than biological sex"). For purposes of this Motion only, the University will assume that Title IX would extend to claims of both sex and sexual orientation discrimination, as the analysis is the same.

discrimination based on sexual orientation are plagued by the same flaw: Plaintiff simply alleges that he is heterosexual and that the University denied his application, with no nexus between the two. FAC ¶¶ 5, 24.

Plaintiff seemingly relies on three concepts to try to overcome these deficiencies: 1) the Wharton application requested the applicant's sex; 2) the University participated in a fellowship program "available to women"; and 3) the University supported LGBTQ+-related programming. None of these averments plausibly shows that Plaintiff was denied admission because he is male or heterosexual.

### A. Wharton's Request That Applicants Identify Their Sex Does Not Support an Inference of Discrimination in Admissions.

Plaintiff first relies on the fact that the Wharton MBA program application required applicants to state their sex. FAC ¶¶ 53, 91. But Title IX's implementing regulations expressly permit institutions to request such information and such a request is not, without more, evidence of discrimination. *See* 34 C.F.R. § 106.21 ("A recipient may ask an applicant to self-identify their sex, but only if this question is asked of all applicants and if the response is not used as a basis for discrimination prohibited by this part."). The fact that the University asked Plaintiff to identify his sex does not itself support any inference of unlawful conduct. Prevailing regulations explicitly distinguish between asking for an applicant's sex and using that information to discriminate. Plaintiff pleads the former, and then summarily concludes the latter.

Plaintiff does not allege that the question about sex was posed differently to male and female applicants, that the University's application stated sex would affect admission, or any other fact suggesting that the information was used to Plaintiff's disadvantage. The FAC simply leaps from the existence of the data field used to identify the applicant's sex to the conclusion that the University "intentionally considered applicants' sex in evaluating applications for admission,"

"considered Plaintiff's sex in evaluating his application," FAC ¶ 95, and, presumably, somehow denied his admission as a result. The lawful collection of information concerning sex, standing alone, does not plausibly establish its discriminatory use, and Plaintiff pleads nothing suggesting such discrimination here.

**B. Alleged Participation in the Forté Fellowship Program Does Not Support an Inference of Discrimination in Admissions.**

The FAC alleges that, during the 2023–24 admissions cycle, Wharton "identified and selected Forté Fellows," characterized by Plaintiff as recipients of an award "available to women," from among applicants to its MBA program. FAC ¶ 92. Even accepting that characterization as true for the purposes of this Motion only, the existence of a fellowship that is "available to women" does not plausibly establish that the University favored women in deciding *who to admit to the Wharton MBA program*.

Plaintiff expressly acknowledges that he does not know "at what stage" Forté Fellows were identified or selected, whether the selection occurred "before or after the admission decision," or whether the individuals responsible for selecting Forté Fellows "also evaluated applications for admission." FAC ¶ 94. Those concessions are fatal to the inference Plaintiff asks the Court to draw. The mere assertion that Wharton participated in a fellowship program "available to women" does not establish that sex was used as an admissions criterion. Nor does Plaintiff allege that he applied for a Forté Fellowship and was denied because he is male. His alleged injury is the denial of admission. Plaintiff instead relies on the unsupported assumption that because Wharton participated in a program that Plaintiff suggests benefited women, Wharton must have advantaged women in admissions. The FAC pleads no facts supporting that inference.

*Tingley-Kelley v. Trustees of University of Pennsylvania*, 677 F. Supp. 2d 764 (E.D. Pa. 2010), is instructive. There, a female applicant challenging her rejection from veterinary school

presented evidence that members of the admissions committee made sex-stereotyped comments and inquiries during her interviews—including comments concerning her status as a mother and the demands of her husband's military service—on the same day the challenged admissions decisions were made. *Id.* at 775–79. The court concluded that those statements permitted a jury to infer that impermissible sex-based considerations affected the admissions decision. *Id.* Here, by contrast, Plaintiff identifies no statement, conduct, or policy linking sex to the persons who reviewed his application or to the University's decision to deny it.

### C. Wharton's LGBTQ+ Programming Likewise Does Not Support an Inference of Discrimination in Admissions.

Finally, the FAC alleges that Wharton Out for Business ("O4B"), a student organization serving LGBTQ+ MBA students, maintains a website separate from the University's web domain which purports to describe Wharton's participation in a "Pre-MBA Admissions Summit" which offers "a networking session with current LGBTQ+ MBA students," and "programming for prospective applicants," including "the opportunity to speak with a 'Queer Admissions Fellow.'" FAC ¶¶ 65–68.

Supporting an affinity group and/or enabling prospective applicants to communicate with students who identify as LGBTQ+ is not evidence of discrimination in admissions. Plaintiff alleges no facts suggesting that participation in any such purported opportunities improved an applicant's likelihood of admission, or that applicants who were not LGBTQ+ were evaluated less favorably. In fact, the FAC pleads the opposite: Plaintiff expressly alleges that O4B informs prospective applicants that identifying oneself as LGBTQ+ on a Wharton MBA program application "will not positively or negatively affect one's chance for admission." FAC ¶ 70. The very material Plaintiff invokes to support his theory affirmatively disclaims the admissions preference he asks the Court to infer.

Ultimately, Plaintiff provides no plausible allegations indicating that the University considered Plaintiff's sex or sexual orientation in deciding whether to admit him. Under the Third Circuit's straightforward pleading standard, that missing connection requires dismissal of Count III with prejudice.

**III. THE FAC SHOULD BE DISMISSED WITH PREJUDICE.**

Plaintiff's entire Complaint should be dismissed with prejudice because amendment would be futile. *See Phillips v. Cnty. of Allegheny,* 515 F.3d 224 (3d Cir. 2008). Amendment is futile where the amended pleading would remain subject to dismissal under Rule 12(b)(6). *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (citing *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000)). Plaintiff has already had the opportunity to substantially revise his allegations, and the FAC demonstrates that the deficiencies in his claims are not matters of form that another amendment could cure. Plaintiff removed many of the allegations underlying his original Complaint and replaced them with different allegations concerning the University's public statements, demographic disclosures, application materials, fellowships, and affinity programming. Yet, even after extensive amendment, Plaintiff still identifies no facts plausibly indicating that it was his race, sex, or sexual orientation – not his admittedly sub-standard GPA – that led to the denial of his MBA application. Because the FAC's deficiencies persist after amendment, and Plaintiff has identified no facts suggesting that another amendment could supply the missing nexus between his protected characteristics and the University's admissions decision, further amendment would be futile. The FAC should therefore be dismissed with prejudice.

**IV. ALTERNATIVELY, PLAINTIFF LACKS STANDING TO SEEK DECLARATORY OR INJUNCTIVE RELIEF.**

Finally, if the Court for some reason declines to dismiss the FAC under Rule 12(b)(6), it should nevertheless narrow the issues for litigation by dismissing Plaintiff's requests for

declaratory and injunctive relief. Plaintiff lacks Article III standing to pursue the extraordinary injunctive relief requested ("Enjoin Penn from considering applicants' race in admission to the Wharton MBA program") because he alleges only a completed injury and does not plausibly allege an ongoing or imminent injury that would be redressed by the requested injunction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992); *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983). Plaintiff alleges only a completed past injury—the denial of his application in April 2024—and does not allege that he has reapplied to Wharton, intends to do so, or otherwise faces any real and immediate threat of another allegedly discriminatory admissions decision. FAC ¶¶ 19, 24.[4]

Accordingly, Plaintiff lacks standing to seek either a declaration concerning the University's admissions practices or an injunction governing future admissions decisions. Even if the Court permits some portion of the FAC to proceed, it should dismiss Plaintiff's requests for declaratory and injunctive relief.

## CONCLUSION

For the foregoing reasons, the University respectfully requests that the Court dismiss the First Amended Complaint in its entirety under Rule 12(b)(6). Because the First Amended Complaint's fundamental defects are not such that additional pleading could render plausible, the dismissal should be with prejudice and without leave to further amend.

[4] In Exhibit A, Plaintiff asserts that he has abandoned "[t]he request for emotional distress damages at Section V, item 4, of the original Complaint, as to all claims arising under Spending Clause legislation." For the avoidance of doubt, to the extent that Plaintiff's request for compensatory damages under Title VI or Title IX encompasses damages for emotional distress or other non-pecuniary emotional injury, such damages are foreclosed by *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 142 S. Ct. 1562, 212 L. Ed. 2d 552 (2022) (emotional distress damages unavailable under Spending Clause statutes).

Strictly in the alternative, the University respectfully requests that the Court dismiss the claims for declaratory and injunctive relief under Rule 12(b)(1). The University further requests such other relief as the Court deems just.

Respectfully submitted,

*\/s/ James A. Keller*
James A. Keller (PA 78955)
Jesse L. Krohn (PA 313059)
**SAUL EWING LLP**
1735 Market Street, Suite 3400
Philadelphia, PA 19103
(215) 972-1964//7869
James.Keller@saul.com
Jesse.Krohn@saul.com

*Counsel for The Trustees of the University of Pennsylvania*

Dated: September 14, 2026

**CERTIFICATE OF SERVICE**

I, James A. Keller, hereby certify that I electronically filed the foregoing Motion to Dismiss First Amended Complaint and Memorandum of Law with the Clerk of the Court for the United States District Court for the Eastern District of Pennsylvania by using the CM/ECF system. I certify that Plaintiff has been served with the documents at his listed address:

John Doe
PO Box 151133
Los Angeles, CA 90015

Respectfully submitted,

*/s/ James A. Keller*
James A. Keller (PA 78955)
Jesse L. Krohn (PA 313059)
**SAUL EWING LLP**
1735 Market Street, Suite 3400
Philadelphia, PA 19103
(215) 972-1964//7869
James.Keller@saul.com
Jesse.Krohn@saul.com

*Counsel for The Trustees of the University of Pennsylvania*

Dated: September 14, 2026