**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| John Doe,<br><br>Plaintiff,<br><br>v.<br><br>The Trustees of the University of Pennsylvania,<br><br>Defendants. | Case No. 2:26-cv-02472-MAK<br><br><br><br><br><br>Electronically Filed |

**DEFENDANT THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA'S
MOTION TO DISMISS PLAINTIFF JOHN DOE'S SECOND AMENDED COMPLAINT**

For the reasons set forth in the Memorandum of Law filed concurrently with this Motion, Defendant The Trustees of the University of Pennsylvania moves to dismiss with prejudice Plaintiff John Doe's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

Defendant also seeks such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ James A. Keller*
James A. Keller (PA 78955)
Jesse L. Krohn (PA 313059)
**SAUL EWING LLP**
1735 Market Street, Suite 3400
Philadelphia, PA 19103
(215) 972-1964//7869
James.Keller@saul.com
Jesse.Krohn@saul.com

Date: October 28, 2026

**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| John Doe,<br><br>Plaintiff,<br><br>v.<br><br>The Trustees of the University of Pennsylvania.,<br><br>Defendants. | Case No. 2:26-cv-02472-MAK<br><br><br><br><br><br>Electronically Filed |

**DEFENDANT THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA'S MEMORANDUM OF LAW IN SUPPORT OF**
**<u>MOTION TO DISMISS PLAINTIFF JOHN DOE'S SECOND AMENDED COMPLAINT</u>**



58875883.1

# TABLE OF CONTENTS


INTRODUCTION .... 1

ARGUMENT .... 2

**I. COUNTS I AND II FAIL TO STATE A CLAIM FOR RACE DISCRIMINATION UNDER TITLE VI AND SECTION 1981. .... 2**

A. The SAC Pleads No Facts Plausibly Connecting Plaintiff's Rejection to Racial Discrimination. .... 4

B. Plaintiff's Alleged Comparators Do Not Supply the Missing Nexus. .... 7

C. Plaintiff's Allegations Concerning The University's "Published Admissions and Testing Data" Do Not Supply the Missing Nexus. .... 9

D. Plaintiff's Allegations Concerning The University's General Admissions Practices Do Not Supply the Missing Nexus .... 10

**II. COUNT III FAILS TO STATE A CLAIM UNDER TITLE IX .... 13**

A. Alleged Participation in the Forté Fellowship Program Does Not Support an Inference of Discrimination in Admissions. .... 15

B. Wharton's LGBTQ+ Programming Likewise Does Not Support an Inference of Discrimination in Admissions. .... 16

**III. THE SAC SHOULD BE DISMISSED WITH PREJUDICE. .... 17**

**IV. ALTERNATIVELY, PLAINTIFF LACKS STANDING TO SEEK DECLARATORY OR INJUNCTIVE RELIEF. .... 18**

CONCLUSION .... 19




58875883.1

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Albright v. Univ. of Cincinnati*, Case No. 1:26-cv-344, 2026 WL 2110547 (S.D. Ohio July 22, 2026) ........................................ 6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................ 2, 9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................ 2

*Bostock v. Clayton Cnty.*, 590 U.S. 644 (2020) ........................................ 14

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ........................................ 18

*Connelly v. Lane Const. Corp.*, 809 F.3d 780 (3d Cir. 2016) ........................................ 2, 18

*Cruz v. Seton Hall Univ.*, Case No. 2:11-cv-01429, 2012 WL 13322671 (D.N.J. July 10, 2012) 14

*Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212 (2022) ........................................ 19

*Doe v. Trs. of Princeton Univ.*, 184 F.4th 193 (3d Cir. 2026)........................................ 14

*Doe v. Univ. of Scis.*, 961 F.3d 203 (3d Cir. 2020) ........................................ 14

*Erickson v. Pardus*, 551 U.S. 89 (2007) ........................................ 4

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) ........................................ 2

*Grabowski v. Arizona Board of Regents*, 69 F. 4th 1110 (9th Cir. 2023) ........................................ 14

*Grayson v. Mayview State Hosp.*, 293 F.3d 103 (3d Cir. 2002) ........................................ 17

*In re New Jersey Title Ins. Litig.*, 683 F.3d 451 (3d Cir. 2012) ........................................ 2

*Katchur v. Thomas Jefferson Univ.*, 354 F. Supp. 3d 655 (E.D. Pa. 2019) ........................................ 6

*L.L. v. Evesham Twp. Bd. of Educ.*, 710 F. App’x 545 (3d Cir. Sept. 27, 2017) ........................................ 3

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ........................................ 18

*Osei v. La Salle Univ.*, 493 F. App’x 292 (3d Cir. Aug. 20, 2012) ........................................ 5, 13

*Phillips v. Cnty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008) ........................................ 17

*Pryor v. Nat’l Collegiate Athletic Ass’n*, 288 F.3d 548 (3d Cir. 2002) ........................................ 3

*Santiago v. Warminster Twp.*, 629 F.3d 121 (3d Cir. 2010) ........................................ 2

*Saravanan v. Drexel Univ.*, Case No. 17-3409, 2017 WL 4532243 (E.D. Pa. Oct. 10, 2017) [*Saravanan I*] ....................3, 13

*Saravanan v. Drexel Univ.*, Case No. 17-3409, 2017 WL 5659821 (E.D. Pa. Nov. 24, 2017) [*Saravanan II*] ....................3

*Schmidt v. Skolas*, 770 F.3d 241 (3d Cir. 2014) ....................4

*Shropshire v. Wheeler*, 858 F. App'x 580 (3d Cir. June 03, 2021) ....................3, 7, 18

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023) ....................10, 11

*Tingley-Kelley v. Trustees of Univ. of Pennsylvania*, 677 F. Supp. 2d 764 (E.D. Pa. 2010) ....................16

*W. Virginia v. B. P. J.*, 609 U.S. __, 146 S. Ct. 2356, 225 L. Ed. 2d 1040 (2026)....................14

*White v. Hon Co.*, 520 F. App'x 93 (3d Cir. Apr. 5, 2013) ....................18

*Zhong v. Cornell Univ.*, Case No. 3:25-cv-365, 2026 WL 2937923 (N.D.N.Y. Sept. 30, 2026)..19

**FEDERAL STATUTES**

20 U.S.C. § 1681(a) ....................14

42 U.S.C. § 1981 .................... passim

42 U.S.C. § 2000d et seq....................3

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6)....................4, 17, 18

Fed. R. Civ. P. 10(a) ....................4

**OTHER AUTHORITIES**

Exec. Order No. 14618, 90 FR 8615 *Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government* (2024) ....................14

## INTRODUCTION

In Plaintiff John Doe's original Complaint (ECF 1), he asserted that he was denied admission to the University of Pennsylvania (the "University") because it was "controlled by the genocidal Jewish Supremacists" who excluded non-Jewish, White males. In his First Amended Complaint ("FAC") (ECF 27), Plaintiff asserted in more tempered language that the University "confer[s] advantage on applicants of Jewish ancestry, homosexuals, and females, thereby disadvantaging non-Jewish White heterosexual males." Now, in his Second Amended Complaint ("SAC") (ECF 33), Plaintiff has completely abandoned his allegations of discrimination against "non-Jewish" applicants; this time, he alleges bias in favor of Black and African American applicants. This raises serious questions about Plaintiff's representations to the Court. Plaintiff appears not to be alleging facts on a good faith basis, but rather scrabbling to file a complaint – *any* complaint – that can survive dismissal, even if that means fundamentally changing his story. That is not a proper use of our judicial system.

Even so, Plaintiff's third attempt to state claims fares no better than his first two attempts. This Court has ruled that in order to survive dismissal, Plaintiff would need to "plead specific facts allowing [the Court] to plausibly infer [the University's] denial of admission to its graduate school is based upon his race or sex without reliance on conclusory and speculative references including the history with other universities before the relevant admissions cycle, or permitted inquiries and relationships with student groups." ECF 30. Yet, Plaintiff's SAC relies on the same "evidence" which this Court previously rejected, buttressed only by unreliable, implausible "comparator evidence" drawn from the anonymous corners of the internet and a deeply flawed attempt at data analysis. Plaintiff does not, and cannot, plead any facts plausibly showing that the University denied him admission to its Wharton MBA program because of his race, sex, or sexual orientation. As such, he does not plausibly assert claims under Title VI of the Civil Rights Act of 1964, 42

U.S.C. § 1981, or Title IX of the Education Amendments of 1972, and the SAC should be dismissed. The dismissal should be with prejudice given that Plaintiff has now had three attempts to state plausible claims and failed each time, even going so far as to fundamentally change the "facts" alleged. Accordingly, providing further leave to amend would be futile, and dismissal should be with prejudice.

## ARGUMENT

To survive dismissal, a complaint must plead enough factual matter to state a facially plausible claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although well-pleaded facts are accepted as true, the Court need not credit "[t]hreadbare recitals of the elements of a cause of action" or "'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). The Third Circuit likewise requires courts to separate factual allegations from legal conclusions, disregard conclusory assertions, and then determine whether the remaining facts plausibly state a claim. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786-87 (3d Cir. 2016); *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010). A complaint must "show" an entitlement to relief with its facts, not merely allege it. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). A complaint should be dismissed with prejudice when amendment would be futile. *See In re New Jersey Title Ins. Litig.*, 683 F.3d 451, 462 (3d Cir. 2012) (court need not permit amendment if inequitable or futile).

### I. COUNTS I AND II FAIL TO STATE A CLAIM FOR RACE DISCRIMINATION UNDER TITLE VI AND SECTION 1981.

Counts I and II should be dismissed because the SAC does not plead facts supporting a plausible inference that the University denied Plaintiff's application to the Wharton MBA program due to his race.

Title VI provides that no person shall "on the ground of race, color, or national origin" be "subject to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d et seq. "To show a prima facie Title VI claim, [plaintiff] must plead he was a member of a protected class qualified for the educational benefit or program at issue and he suffered an adverse action occurring under circumstances giving rise to an inference of discrimination." *Saravanan v. Drexel Univ.*, Case No. 17-3409, 2017 WL 5659821, *8 (E.D. Pa. Nov. 24, 2017) [*Saravanan II*] (quotation marks and citation omitted); *see also Saravanan v. Drexel Univ.*, Case No. 17-3409, 2017 WL 4532243 (E.D. Pa. Oct. 10, 2017) [*Saravanan I*]. A viable Title VI claimant must allege different treatment from similarly situated individuals outside the protected class, or show "some additional evidence exists that establishes a causal nexus between the harm suffered and the plaintiff's membership in a protected class, from which a reasonable juror could infer, in light of common experience, that the defendant acted with discriminatory intent." *L.L. v. Evesham Twp. Bd. of Educ.*, 710 F. App'x 545, 548-49 (3d Cir. Sept. 27, 2017) (internal quotation omitted).

Similarly, to establish a right to relief under Section 1981, a plaintiff must show (1) that he belongs to a protected class; (2) "an intent to discriminate on the basis of race by the defendant"; and (3) "discrimination concerning one or more of the activities enumerated in § 1981, including the right to make and enforce contracts." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 569 (3d Cir. 2002) (quotation marks and citation omitted). "The standard for establishing an intent to discriminate on the basis of race is identical in the Title VI and § 1981 contexts." *Id.* (citation omitted). A plaintiff does not satisfy that standard merely by noting his race, alleging that he experienced an adverse decision, and baldly asserting that the two are connected. *See Shropshire v. Wheeler*, 858 F. App'x 580, 583–84 (3d Cir. 2021 June 03, 2021) (affirming dismissal where

plaintiff's allegations did not contain factual material from which discrimination could plausibly be inferred and holding that the district court therefore was not required to allow discovery).

### A. The SAC Pleads No Facts Plausibly Connecting Plaintiff's Rejection to Racial Discrimination.

The SAC pleads no facts plausibly connecting the rejection of Plaintiff's application for admission to Wharton to intentional discrimination based on his race (White). Plaintiff alleges that he submitted his application on April 2, 2024, and that the University denied admission without an interview on April 19, 2024. SAC ¶¶ 8, 17. Plaintiff avers that his GMAT score placed him in the top one percent of test takers; that he earned a bachelor's degree at a "state university"; and that he had "work experience of a duration within the range of admitted applicants," all of which leads him to conclude that he "was qualified for admission to the Wharton MBA program." *Id.* ¶¶ 9-12.[1] Plaintiff did not include any assertions about his undergraduate grades or GPA in describing his qualifications for admission, but later in the SAC acknowledges that his GPA was below a 3.4, *id.* ¶¶ 47, 53, and that the average undergraduate grade point average for students admitted that year was a 3.7; as such his undergraduate GPA was below that of the average admit

[1] In deciding a motion to dismiss under Rule 12(b)(6), the Court is required to accept as true all of the factual allegations in the operative complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Because Plaintiff has concealed his identity, and did not append a copy of the application he says was unfairly rejected to the SAC, the University cannot confirm that Plaintiff actually even applied to the University as asserted, or, if he did, what information he included in his application.

Plaintiff's application is plainly integral to the SAC: his claims are grounded in his assertion that he was a qualified applicant for admission, which necessarily depends on what he actually submitted to the University. A plaintiff should not be able to "evade accountability" by omitting a "document integral to or explicitly relied upon in the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249-50 (3d Cir. 2014). The University explicitly preserves its right to move to dismiss on bases which are as yet undiscovered due to Plaintiff's failure to comply with the requirement of Rule 10(a) to "name **all** the parties" (emphasis added).

to the Wharton MBA program. *Id.* ¶ 55; *see also* Ex. R.[2] Although Plaintiff acknowledges that Wharton sought information about applicants' personal, professional, and academic backgrounds, including their "intended contributions to the Wharton community," "community honors," "extracurricular activities," and "community engagements," Plaintiff provides no such information about himself as included in his application. SAC ¶ 75.

Plaintiff's allegation that he was not admitted despite a superior GMAT score and "work experience of a duration within the range of admitted applicants" does not plausibly support an inference that race—rather than the comparative assessment of his application as a whole—explains why he was not admitted. Plaintiff identifies no discriminatory statement by an admissions official. He alleges no departure from Wharton's ordinary admissions procedures in reviewing his application. He does not identify any person who evaluated his application and allegedly harbored racial bias. In fact, Plaintiff expressly admits that he does not know "the criteria applied to Plaintiff's application, the identity of the persons who evaluated it, or what information within it was before those persons." *Id.* ¶ 18.

That concession exposes the central defect of Counts I and II, and should be dispositive. Plaintiff does not allege facts showing why his application was denied: rather, he alleges that he does not know why it was denied and seeks discovery into the University's admissions processes in order to find out. But, lack of information is not affirmative support for an inference of discrimination. The pleading standard requires "some nexus between the adverse action suffered and the disparate treatment" before discovery begins. *Osei v. La Salle Univ.*, 493 F. App'x 292, 296 (Aug. 20, 2012 3d Cir. 2012). Otherwise, just about every disappointed applicant could utilize

---

[2] Plaintiff previously explicitly acknowledged that his undergraduate GPA was "below that of the average admit to the Wharton MBA program." FAC ¶ 21.

our federal court system to gain insight into why they did not get admission to their preferred higher education institution or program. That is not tenable, and it is not the law.

*Katchur v. Thomas Jefferson University*, 354 F. Supp. 3d 655 (E.D. Pa. 2019), is instructive. In *Katchur*, the rejected applicant alleged that the defendant university's Director of Admissions told her directly that she would have been admitted if she were African American, encouraged her to obtain genetic testing to identify minority ancestry that could improve her admissions prospects, and discussed another applicant who allegedly benefited from doing so. *Id.* at 666–68. Those allegations directly connected race to the challenged admissions decision, and were therefore sufficient to support a plausible inference of discrimination at the motion to dismiss stage. By contrast, in *Albright v. University of Cincinnati*, Case No. 1:26-CV-344, 2026 WL 2110547 (S.D. Ohio July 22, 2026), the Southern District of Ohio dismissed a *pro se* applicant's Title VI claim challenging a graduate admissions denial where the plaintiff alleged only that he belonged to a protected class, that the university knew it, and that the university denied him admission. *Id.* at *3. Because he pleaded no plausible facts suggesting the denial occurred because of that protected characteristic—such as facts showing he was more objectively qualified than admitted applicants outside his class or that any university official made racially derogatory statements—the court held that his allegations showed only denial plus protected status, not discrimination because of protected status. *Id.* at *4.

Plaintiff's complaint is exactly like *Albright*, and nothing like *Katchur*. Unlike the plaintiff in *Katchur*, Plaintiff identifies no statement by an admissions official, policy, or other fact directly linking race to the denial of his application. He instead asks the Court to infer racially discriminatory intent from nothing more than his rejection, and then permit a fishing expedition to see if that inference is true. The Federal Rules of Civil Procedure do not permit this. *See, e.g.*,

*Shropshire*, 858 F. App'x at 583-84. Even when information relevant to a claim is principally within a defendant's possession, a plaintiff must still plead facts making the asserted claim plausible; conclusory allegations do not become sufficient merely because discovery might uncover additional information. *Id.*

Here, Plaintiff has identified his race, and he has noted an adverse admissions result at Wharton. What he has not pled is any factual connection between the two. Counts I and II are facially deficient and should be dismissed.

**B. Plaintiff's Alleged Comparators Do Not Supply the Missing Nexus.**

In the SAC, Plaintiff for the first time attempts to identify comparators whose admission to the University could serve as a basis for concluding that his denial of admission was discriminatory. Plaintiff's alleged "comparator evidence" is drawn from a website with no connection to the University whatsoever on which "applicants to graduate business programs self-report their application outcomes, test scores, undergraduate grade point averages, years of work experience, location, and sex." SAC ¶ 46. Plaintiff provides no assertions whatsoever about the reliability of information which anonymous users input to the website. And, even if the anonymous users' submissions are reliable, their purported qualifications do not demonstrate that Plaintiff was an equally or more qualified candidate who received a different result because of his race.

First, Plaintiff identifies a user with the pseudonym "Stargirl66" and provides her years of work experience, GRE score, and undergraduate GPA, asserting that although his "undergraduate grade point average is lower," his "standardized test percentile is higher," and she was admitted while he was not. *Id.* ¶¶ 47-49, 53. He does not purport to assign a race to "Stargirl66." "Stargirl66" is not an adequate comparator: even if the online post is true, she did not even take the same standardized test as Plaintiff (rather, she took the GRE) and *by Plaintiff's own admission* had a

higher GPA. Moreover, Plaintiff does not (and cannot) speak to their relative achievements in the other areas considered by the University, such as "intended contributions to the Wharton community," "community honors," "extracurricular activities," and "community engagements." *Id.* ¶ 75.

Next, Plaintiff identifies a user with the pseudonym "A777777" and provides that user's years of work experience, GRE Score, and undergraduate GPA. *Id.* ¶ 50. Plaintiff asserts that his "standardized test percentile" and GPA were higher than those of "A777777," yet "A777777" was admitted, and Plaintiff was not. *Id.* ¶¶ 51-53. Plaintiff does not purport to assign a race or sex to "A777777." Again, "A777777" is not an adequate comparator. As with "Stargirl66," this person took the GRE, not the GMAT; Plaintiff presents the purported difference in GPA without any sense of degree;[3] and again does not speak to the two applicants' relative achievements in the other areas considered by the University, such as "intended contributions to the Wharton community," "community honors," "extracurricular activities," and "community engagements." *Id.* ¶ 75.

To further illustrate, "A777777" could have attended a prestigious undergraduate program, not an unnamed "state university," like Plaintiff. "Stargirl66" could be a successful entrepreneur, or a celebrated athlete, while Plaintiff's personal accomplishments could be mundane. In a competitive admissions process, it is insufficient for Plaintiff to point to his GMAT score as if it were an admissions ticket. Crucially, Plaintiff does not provide a race for either "Stargirl66" or "A777777," or a sex for "A777777." He merely asserts "on information and belief" that A777777's race "differed from Plaintiff's race." *Id.* ¶ 50. But, Plaintiff points to no "information"

[3] Put another way: a 3.23 is "higher" than a 3.22, but such a minute degree of difference is unlikely to be outcome determinative. Plaintiff's GPA is unknown, but by his admission, below a 3.4. *Id.* ¶¶ 47, 53.

on which he relied to form that "belief" – "A777777" could be a White male, like Plaintiff.[4] This "comparator evidence" is nothing of the kind and does not supply the missing nexus that would take Plaintiff's denial of admission from merely personally disappointing to discriminatory.

### C. Plaintiff's Allegations Concerning The University's "Published Admissions and Testing Data" Do Not Supply the Missing Nexus.

In the SAC, Plaintiff attempts to use data analysis as a basis to conclude that his denial of admission was discriminatory and enable his claims to survive dismissal. Plaintiff's attempts at data analysis are deeply flawed and are not well-pleaded facts the Court must accept as true. *Iqbal*, 556 U.S. at 678. They are admittedly built on "assumption[s] [Plaintiff] cannot verify," for which Plaintiff provides no basis, and which are objectively unreasonable – most notably, the "assumption" that students "submitted GMAT scores rather than GRE scores," when the only two comparators Plaintiff could muster both purportedly submitted GRE scores. Additionally, it is facially implausible that a single MBA program enrolled 79% of all Black or African American GMAT test-takers with high scores: as Plaintiff acknowledges, "[m]any other graduate business programs" – including those which have been sued by Plaintiff – "publish average GMAT scores within a narrow range of Wharton's published average, and draw their applicants from the same national pool of examinees." *Id.* ¶ 63.

Instead of realizing that this impossible outcome shows the flaws of his data analysis, Plaintiff asserts that it constitutes a fact plausibly showing that the University used Plaintiff's race against him when it denied his application. It does not.

---

[4] To the extent Plaintiff is hinting, without saying, that he bases this assertion on the fact that "A777777" listed their location as "Turkey," the University notes that living in Turkey is not a race.

### D. Plaintiff's Allegations Concerning The University's General Admissions Practices Do Not Supply the Missing Nexus.

Plaintiff's other allegations concerning the University's general admissions practices have no connection to his rejection and do not supply a plausible nexus between Plaintiff's race and the decision to deny him admission.

Plaintiff suggests that the University did not make appropriate changes to its admissions practices in light of the Supreme Court's decision in *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023) ("*SFFA*"). He points to the University's "Common Data Set" for 2022–23, which identified "Racial/ethnic status" as a factor "Considered" in first-year undergraduate admission decisions. SAC ¶¶ 23, 28. But, Plaintiff did not apply for undergraduate admission to the University, and he did not apply during the 2022–23 admissions cycle: he applied to the Wharton MBA program during the 2023–24 cycle. *Id.* ¶ 8. Moreover, the Supreme Court decided *SFFA* on June 29, 2023, before which time there was nothing inherently suspect in a university acknowledging the mere consideration of race in admissions, without more. *Id.* ¶ 24. Plaintiff alleges that the University responded to the *SFFA* decision by immediately announcing that the decision would "require changes in [the University's] admissions practices." *Id.* ¶ 25. Plaintiff does not allege that the University failed to make changes, but instead relies principally on an assertion that the University has not publicly explained precisely what it changed, when each change took effect, or how its internal procedures operate. *Id.* ¶¶ 26–27, 29.

First, Plaintiff does not allege, nor could he, that the University had some affirmative obligation to advise him of how it was evaluating the *SFFA* decision. But, in any event, Plaintiff's own allegations undercut any suggestions that the University has implemented *SFFA* in a discriminatory way. Plaintiff alleges that, before *SFFA*, the University's graduate application disclosure stated that demographic information would be used in part "to facilitate selection of a

diverse student body" and referred expressly to "race and/or ethnicity." *Id.* ¶¶ 31-32. He then alleges that, for the **2023–24 admissions cycle in which he applied**, the University removed both statements. *Id.* ¶ 32. He further acknowledges that the application he filled out stated that disclosure of demographic information was voluntary, and that answering or declining to answer those questions "would not influence the University's decision on admission." *Id.* ¶¶ 33-34.

The facts Plaintiff actually pleads show that: (1) *SFFA* was decided before he applied; (2) the University announced that it would change its admissions practices in response; and (3) the University indeed altered its graduate application materials for the admissions cycle during which Plaintiff submitted an application. *Id.* ⁋⁋ 24, 25, 31-32. Plaintiff's rank speculation that the University might nevertheless have continued to consider race in admissions, because the University theoretically has not publicly disclosed every aspect of its internal decision-making process, does not constitute a plausible claim of discrimination against anyone, let alone against Plaintiff.

Plaintiff's allegations concerning the University's collection of demographic and biographical information fare no better. He alleges that Wharton continued to collect optional ethnicity information after *SFFA*, and that the pertinent application also sought information concerning an applicant's background from which race (and/or sex or sexual orientation) might potentially be inferred. *Id.* ¶¶ 76-77. This argument falls flat. The mere ability to know or somehow "infer" an applicant's race does not suggest the use of race as an admissions criterion, as *SFFA* itself makes clear. 600 U.S. at 230–31 (permitting consideration of an application in which the candidate for admission discusses their race, so long as the applicant is "treated based on his or her experiences as an individual – not on the basis of race").

Plaintiff concedes that "Penn's collection" of this information is not itself unlawful, SAC ¶ 78, but asks the Court to assume it is being used unlawfully because the University "has not disclosed whether or how that information is used" or if it redacts "information from which race, sex, and age may be inferred." *Id.* ¶¶ 78-79. Plaintiff baldly asserts that "upon information and belief, Penn employs no [commercially available software tool]" for the purposes of redaction and concludes that "the persons who evaluated Plaintiff's application therefore had available to them the means by which an applicant's race, sex, or sexual orientation could be taken into account." *Id.* ¶¶ 79-80. Again, Plaintiff points to no "information" on which he relied to form that "belief," and even if it was true that the University did not use a "commercially available software tool," that does not mean the University does not restrict access to such information through other means, or speak in any way to its use – or, rather, non-use – of such data.

The University's public reporting of demographic data also fails to support Plaintiff's theory. The SAC alleges that the University did not publish a final year-over-year comparison of racial demographic data as between 2022-2023 and 2023-2024, and now publishes "less information than the school-level data Wharton had previously made publicly available." *Id.* ¶¶ 70–74. But, the University is not required to disclose such data, and Plaintiff offers no facts connecting the University's decisions about what data to publish to the evaluation of his application, or explaining why those decisions make it more plausible that the University discriminated against him because he is White (or male, or heterosexual). At most, those allegations reflect Plaintiff's dissatisfaction with the amount of admissions-related information the University makes publicly available. They do not come close to plausibly pleading discriminatory intent.

Finally, Plaintiff's allegations concerning the Howard E. Mitchell Fellowship are unavailing. Plaintiff alleges that he has seen the Fellowship described on a "corporate and recruiter website" as "a pooled fund for exceptional students from underrepresented backgrounds." *Id.* ¶ 65. Plaintiff acknowledges that "Wharton's current MBA financial aid materials do not describe the Howard E. Mitchell Fellowship or its eligibility criteria," and instead "describe a Wharton Fellowship Program for which **all admitted students** are considered…." *Id.* ¶ 67 (emphasis added). The SAC does not allege that Plaintiff applied for and was denied the Howard E. Mitchell Fellowship, that the criteria referenced on the "corporate and recruiter website" governed during his admissions cycle, or that eligibility for any fellowship played a role in determining whether an applicant was admitted to Wharton in the first place. Indeed, Plaintiff explicitly alleges that he does not know what criteria currently govern the award, or which were in place when he applied. *Id.* ¶¶ 68-69. These allegations do not plausibly connect Plaintiff's race to the denial of his MBA application.

In sum, none of Plaintiff's assertions supply what Counts I and II require: facts plausibly showing that the University used Plaintiff's race against him when it denied his application. *See Osei*, 493 F. App'x at 296; *Saravanan I*, 2017 WL 4532243 at *1 (finding that a student "must allege more than repeated conclusions blaming the [adverse] decision on discriminatory animus"). Counts I and II should be dismissed, with prejudice.

## II. COUNT III FAILS TO STATE A CLAIM UNDER TITLE IX.

Count III should likewise be dismissed because the SAC pleads no facts supporting a plausible inference that the University denied Plaintiff's application to the Wharton MBA program due to his sex or sexual orientation.[5] Title IX provides that no person shall, "on the basis of sex,"

[5] There is not currently precedential case law establishing that Title IX's protections extend to discrimination based on sexual orientation. While some federal circuits have so held, *e.g.*,

be excluded from participation in, denied the benefits of, or subjected to discrimination under an education program or activity receiving federal financial assistance. 20 U.S.C. § 1681(a). The Third Circuit applies a "straightforward pleading standard" to Title IX discrimination claims: the alleged facts, if true, must support a plausible inference that a federally funded educational institution discriminated against the plaintiff on the basis of sex. *Doe v. Univ. of Scis.*, 961 F.3d 203, 209 (3d Cir. 2020); *accord Doe v. Trs. of Princeton Univ.*, 184 F.4th 193, 202 (3d Cir. 2026). Absent direct evidence, a plaintiff must allege "*both* background indicia of sex discrimination…*and* what is sometimes called a 'particularized something more'" evidencing bias in his specific case. *Id.* (internal quotation marks and citations omitted) (emphasis in original). Plaintiff alleges neither.

Plaintiff merely alleges that he is male and that the University denied his application. SAC ¶¶ 5, 17. But, just as with his race discrimination claims, Plaintiff identifies no factual nexus between those two allegations. He identifies no statement reflecting sex-based bias, no admissions policy favoring women, and no allegation that any individual evaluating his application treated his

---

*Grabowski v. Arizona Board of Regents*, 69 F. 4th 1110, 1118 (9th Cir. 2023), neither the United States Supreme Court nor our Third Circuit have ruled on this issue. There is also District Court caselaw in the Third Circuit to the contrary, *Cruz v. Seton Hall University*, Case No. 2:11-cv-01429, 2012 WL 13322671, *5 (D.N.J. July 10, 2012), although *Cruz* was admittedly decided before the Supreme Court's decision in *Bostock v. Clayton County*, 590 U.S. 644 (2020), which determined that Title **VII**'s protections extend to discrimination based on sexual orientation.

In any event, there is an ongoing dispute as to whether *Bostock's* holding should apply to Title IX. The current President of the United States does not think so. *See* Exec. Order No. 14618, 90 FR 8615, 8616, *Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government* (2024), directing federal agencies to "correct the misapplication of the Supreme Court's decision in Bostock v. Clayton County (2020)" to Title IX. And, in a somewhat different context, the Supreme Court very recently issued an opinion suggesting that "sex" in Title IX means nothing more than that. *W. Virginia v. B. P. J.*, 609 U.S. __, 146 S. Ct. 2356, 225 L. Ed. 2d 1040 (2026) (holding that "the term 'sex'" as used in the Title IX statute "cannot plausibly be interpreted to refer to anything other than biological sex"). For purposes of this Motion only, the University will assume that Title IX would extend to claims of both sex and sexual orientation discrimination, as the analysis is the same.

sex as a factor in deciding whether to admit him; the one comparator he attempts to establish, "Stargirl66," is no comparator at all – she took a different standardized test (GRE, not GMAT) and had a higher GPA. *Id.* ¶¶ 47, 53. Plaintiff's allegations of discrimination based on sexual orientation suffer the same flaw: Plaintiff simply alleges that he is heterosexual and that the University denied his application, with no nexus between the two. *Id.* ¶¶ 5, 17.

Plaintiff relies on two alleged facts to try to overcome these deficiencies: (1) the University participated in a fellowship program "available to women"; and (2) the University supported LGBTQ+-related programming. None of these averments plausibly shows that Plaintiff was denied admission because he is male or heterosexual.

### A. Alleged Participation in the Forté Fellowship Program Does Not Support an Inference of Discrimination in Admissions.

The SAC alleges that, during the 2023–24 admissions cycle, Wharton "identified and selected Forté Fellows," characterized by Plaintiff as recipients of an award "aimed at women," from among applicants to its MBA program. SAC ¶¶ 36, 38. Even accepting that characterization as true for the purposes of this Motion only, the existence of a fellowship that is "aimed at women" does not plausibly establish that the University favored women in deciding *who to admit to the Wharton MBA program*.

Plaintiff expressly acknowledges that he does not know "at what stage" Forté Fellows were identified or selected, whether the selection occurred "before or after the admission decision," or whether the individuals responsible for selecting Forté Fellows "also evaluated applications for admission." *Id.* ¶ 39. Those concessions are fatal to the inference Plaintiff asks the Court to draw. The mere assertion that Wharton participated in a fellowship program "aimed at women" does not establish that sex was used as an admissions criterion. Nor does Plaintiff allege that he applied for a Forté Fellowship and was denied because he is male. His alleged injury is the denial of admission.

Plaintiff instead relies on the unsupported assumption that because Wharton participated in a program that Plaintiff suggests was "aimed at women," Wharton must have advantaged women in admissions. The SAC pleads no facts supporting that inference.

*Tingley-Kelley v. Trustees of University of Pennsylvania*, 677 F. Supp. 2d 764 (E.D. Pa. 2010), is instructive. There, a female applicant challenging her rejection from veterinary school presented evidence that members of the admissions committee made sex-stereotyped comments and inquiries during her interviews—including comments concerning her status as a mother and the demands of her husband's military service—on the same day the challenged admissions decisions were made. *Id.* at 775–79. The court concluded that those statements permitted a jury to infer that impermissible sex-based considerations affected the admissions decision and denied summary judgment. *Id.* Here, by contrast, Plaintiff identifies no statement, conduct, or policy linking sex to the persons who reviewed his application or to the University's decision to deny it.

**B. Wharton's LGBTQ+ Programming Likewise Does Not Support an Inference of Discrimination in Admissions.**

Finally, the SAC alleges that Wharton Out for Business ("O4B"), a student organization serving LGBTQ+ MBA students, maintains a website separate from the University's web domain which purports to describe Wharton's participation in a "Pre-MBA Admissions Summit" which offers "a networking session with current LGBTQ+ MBA students," and "programming for prospective applicants," including "the opportunity to speak with a 'Queer Admissions Fellow.'" *Id.* ¶¶ 40–43.

Supporting an affinity group and/or enabling prospective applicants to communicate with students who identify as LGBTQ+ is not evidence of discrimination in admissions. Plaintiff alleges no facts suggesting that participation in any such purported opportunities improved an applicant's likelihood of admission, or that applicants who were not LGBTQ+ were evaluated less favorably.

In fact, the SAC pleads the opposite: Plaintiff expressly alleges that O4B informs prospective applicants that identifying oneself as LGBTQ+ on a Wharton MBA program application "will not positively or negatively affect one's chance for admission." *Id.* ¶ 44. The very material Plaintiff invokes to support his theory affirmatively disclaims the admissions preference he asks the Court to infer.

Ultimately, Plaintiff provides no plausible allegations indicating that the University considered Plaintiff's sex or sexual orientation in deciding whether to admit him. Under the Third Circuit's straightforward pleading standard, that missing connection requires dismissal of Count III with prejudice.

## III. THE SAC SHOULD BE DISMISSED WITH PREJUDICE.

Plaintiff's entire Second Amended Complaint should be dismissed with prejudice because amendment would be futile. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008). Amendment is futile where the amended pleading would remain subject to dismissal under Rule 12(b)(6). *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (citing *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000)). Plaintiff has already had the opportunity to substantially revise his allegations twice, and the SAC demonstrates that the deficiencies in his claims are not matters of form that another amendment could cure.

In the SAC, Plaintiff excuses his inability to supply facts in support of his claims by asserting that they are "within Penn's exclusive possession and control" no less than eight times. Plaintiff thus concedes that he cannot identify additional facts he could plead in a **fourth** complaint that would supply the missing causal nexus between his alleged protected characteristics and the denial of his application. Instead, his position is that he needs discovery from the University before he can determine whether such facts exist. That is precisely why amendment would be futile. And, for the avoidance of doubt, the unavailability of evidence which might make Plaintiff's (totally

speculative) case provides no basis to deem sufficient a facially *insufficient* complaint for the purposes of permitting him to access discovery, as even when information relevant to a claim is principally within a defendant's possession, a plaintiff must still plead facts making the asserted claim plausible. *Shropshire*, 858 F. App'x at 583-4; *see also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) (a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims"). A plaintiff "may not attempt to use discovery as a fishing expedition" in order "to seek out the facts necessary to establish a legally adequate complaint." *White v. Hon Co.*, 520 F. App'x 93, 95 (3d Cir. Apr. 5, 2013).

After three attempts, Plaintiff still identifies no facts plausibly indicating that it was his race, sex, or sexual orientation that led to the denial of his MBA application. Because the deficiencies persist after amendment, and Plaintiff has identified no facts suggesting that another amendment could supply the missing nexus between his protected characteristics and the University's admissions decision, further amendment would be futile. The SAC should therefore be dismissed with prejudice.

## IV. ALTERNATIVELY, PLAINTIFF LACKS STANDING TO SEEK DECLARATORY OR INJUNCTIVE RELIEF.

Finally, if the Court for some reason declines to dismiss the SAC under Rule 12(b)(6), it should nevertheless narrow the issues for litigation by dismissing Plaintiff's requests for declaratory and injunctive relief. Plaintiff lacks Article III standing to pursue the extraordinary injunctive relief requested ("Enjoin Penn from considering race, sex, or sexual orientation in evaluating applications for admission to the full-time MBA program of the Wharton School") because he alleges only a completed injury and does not plausibly allege an ongoing or imminent injury that would be redressed by the requested injunction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992); *City of Los Angeles v. Lyons*, 461 U.S. 95, 105-6 (1983). Plaintiff alleges only

a completed past injury—the denial of his application in April 2024—and does not allege that he has reapplied to Wharton, intends to do so, or otherwise faces any real and immediate threat of another allegedly discriminatory admissions decision.[6] *See Zhong v. Cornell Univ.*, Case No. 3:25-cv-365, 2026 WL 2937923, *5 (N.D.N.Y. Sept. 30, 2026) (no standing to challenge defendant university's current admissions practices where prospective student's "amended complaint does not allege that [he] intends to apply to [the university] or that he is 'able and ready' to apply," and, as such, "failed to allege that he will suffer a future harm, and thus, lacks standing to the extent his claims seek prospective relief").

Accordingly, Plaintiff lacks standing to seek either a declaration concerning the University's admissions practices or an injunction governing future admissions decisions. Even if the Court permits some portion of the SAC to proceed, it should dismiss Plaintiff's requests for declaratory and injunctive relief.

## **CONCLUSION**

For the foregoing reasons, the University respectfully requests that the Court dismiss the Second Amended Complaint in its entirety under Rule 12(b)(6). Because the Second Amended Complaint's fundamental defects are not such that additional pleading could render plausible, the dismissal should be with prejudice and without leave to further amend.

Strictly in the alternative, the University respectfully requests that the Court dismiss the claims for declaratory and injunctive relief under Rule 12(b)(1). The University further requests such other relief as the Court deems just.

---

[6] Plaintiff has not re-asserted a prior stated request for emotional distress damages. For the avoidance of doubt, to the extent that Plaintiff's request for damages under Title VI or Title IX purports to encompass damages for emotional distress or other non-pecuniary emotional injury, such damages are foreclosed by *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212 (2022) (emotional distress damages unavailable under Spending Clause statutes).

Respectfully submitted,

*/s/ James A. Keller*
James A. Keller (PA 78955)
Jesse L. Krohn (PA 313059)
**SAUL EWING LLP**
1735 Market Street, Suite 3400
Philadelphia, PA 19103
(215) 972-1964//7869
James.Keller@saul.com
Jesse.Krohn@saul.com

*Counsel for The Trustees of the University of Pennsylvania*

Dated: October 28, 2026

**CERTIFICATE OF SERVICE**

I, James A. Keller, hereby certify that I electronically filed the foregoing Motion to Dismiss Second Amended Complaint and Memorandum of Law with the Clerk of the Court for the United States District Court for the Eastern District of Pennsylvania by using the CM/ECF system. I certify that Plaintiff has been served with the documents by electronic mail and through the CM/ECF system.

Respectfully submitted,

*/s/ James A. Keller*

James A. Keller (PA 78955)
Jesse L. Krohn (PA 313059)
**SAUL EWING LLP**
1735 Market Street, Suite 3400
Philadelphia, PA 19103
(215) 972-1964//7869
James.Keller@saul.com
Jesse.Krohn@saul.com

*Counsel for The Trustees of the University of Pennsylvania*

Dated: October 28, 2026