IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE, | : CIVIL ACTION |
| Plaintiff, | : |
| v. | : NO. 2:26-cv-02472-MAK |
| THE TRUSTEES OF THE | : |
| UNIVERSITY OF PENNSYLVANIA, | : |
| Defendant. | : |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION

I. LEGAL STANDARD

A. A discrimination plaintiff need not plead a prima facie case.

B. Comparator allegations are not required, and the allegations must be weighed as a whole.

C. Facts within Defendant's exclusive control may be pleaded on information and belief.

II. THE MOTION DOES NOT ADDRESS THE PLEADING PLAINTIFF FILED

A. Allegations of Defendant's nondisclosure are restated as admissions of Plaintiff's ignorance.

B. Authorities stating what is sufficient are quoted as stating what is required.

C. Defendant's own statements are treated as established facts.

D. The motion omits the operative language of the paragraphs it quotes.

III. COUNTS I AND II STATE CLAIMS FOR RACE DISCRIMINATION

A. Plaintiff's race is no obstacle, and the burden is "rather modest."

B. The comparators are sufficient at the pleading stage.

C. The published admissions and testing data are an argument by contradiction.

D. Penn's acknowledged practice and its undescribed change are corroboration.

IV. COUNT III STATES A CLAIM UNDER TITLE IX

A. The standard is the straightforward one this Court already applied.

B. The Second Amended Complaint satisfies the framework in any event.

C. The fellowship allegations concern Penn's use of sex, not Plaintiff's eligibility for an award.

V. DISMISSAL WITH PREJUDICE IS NOT WARRANTED

VI. PLAINTIFF DOES NOT OPPOSE DISMISSAL OF PROSPECTIVE RELIEF

CONCLUSION

**INTRODUCTION**

Defendant asks this Court to dismiss with prejudice a pleading its motion does not describe accurately. The motion recites a prima facie standard that its own authorities reject at the pleading stage. It twice converts a statement of what is sufficient into a statement of what is required. It restates Plaintiff's allegations about what Penn has withheld as admissions about what Plaintiff does not know. And where it quotes the Second Amended Complaint, it omits the language that answers the argument it is making.

Penn argues that Plaintiff asks the Court to infer discrimination from nothing more than the fact that he was rejected. That is not what the Second Amended Complaint alleges. The rejection is the injury, not the evidence. The pleading alleges that Penn required every applicant, including Plaintiff, to state his or her sex (¶ 13); that the materials Plaintiff submitted contained further information from which his race, sex, and sexual orientation could be inferred (¶¶ 75–77); that Penn has disclosed no procedure by which any of that information is withheld from the persons who read and evaluate applications (¶¶ 16, 80); that Wharton itself identified and selected the recipients of an award aimed at women from information contained in the general application for admission (¶¶ 36, 38); that a Wharton document states an express preference, in the award of ten annual full-tuition fellowships, for "African Americans, American Indians, Hispanics and women" (¶ 66); that Wharton's own materials provide that fellowship awards are determined from the application for admission and offered in the admission and financial aid letter (¶ 67); that two applicants reporting standardized test percentiles below Plaintiff's were admitted to the same program, for the same entering class, in the same admissions cycle in which Plaintiff was denied (¶¶ 47–53); that Penn's President and Provost announced that the Supreme Court's decision "will require changes in our admissions practices," and that Penn has never described the change (¶¶

25–27); that Penn published demographic figures for its most recent MBA class, disclaimed their accuracy, declined to provide corrected figures when asked, and reduced the granularity of its subsequent public reporting (¶ 74); and that, subject to assumptions the pleading states expressly and identifies as assumptions, figures Wharton published about its Class of 2026 and figures GMAC published about United States examinees support the inference that the distribution of objective academic credentials among Wharton's admitted students differs by race (¶¶ 55–64).

On September 30 this Court directed Plaintiff to plead specific facts without relying on the acknowledged history of other universities before the relevant cycle, on permitted inquiries, or on relationships with student groups. (ECF 30.) Plaintiff has done that; the material concerning other universities no longer appears in the pleading at all. The allegations he now leads with — the comparators, Wharton's own selection of award recipients by sex and race, the published admissions and testing figures, and the demographic figures Penn published and then disclaimed — are new, specific, and drawn almost entirely from Penn's own documents. The motion should be denied.

## I. LEGAL STANDARD

A complaint survives Rule 12(b)(6) if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (citation modified). Plausibility "is not akin to a probability requirement." *Id.* Our Court of Appeals applies a three-step method: the court takes note of the elements, sets aside allegations that "because they are no more than conclusions, are not entitled to the assumption of truth," and then assumes the veracity of what remains "and determine[s] whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675,

679). At the third step the remaining allegations are "accepted as true and construed in the light most favorable to" the plaintiff. *Id.* at 791.

Because Plaintiff proceeds pro se, his pleading is construed "liberally" and held to "less stringent standards than formal pleadings drafted by lawyers," though he must still allege sufficient facts. *Freeman v. Lincalis*, 158 F.4th 166, 175 (3d Cir. 2025); *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013).

**A. A discrimination plaintiff need not plead a prima facie case.**

The motion measures the Second Amended Complaint against the elements of a prima facie case. Our Court of Appeals has addressed that precise error. In *Connelly*, the district court's "analysis proceeded with a point-by-point consideration of the elements of a prima facie case," and the Court of Appeals reversed: "It is thus worth reiterating that, at least for purposes of pleading sufficiency, a complaint need not establish a prima facie case in order to survive a motion to dismiss." 809 F.3d at 788–89. A prima facie case is "an evidentiary standard, not a pleading requirement," *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510 (2002), and hence is "not a proper measure of whether a complaint fails to state a claim," *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) — both quoted in *Connelly*, 809 F.3d at 789.

The same rule governs in the educational context. In *Katchur v. Thomas Jefferson University* — the decision Defendant offered as instructive and this Court analyzed (ECF 30 at 2) — Judge Baylson held that "[t]hough a plaintiff pleading discrimination need not meet the prima facie standard to survive dismissal, the complaint must contain sufficient factual allegations to raise a reasonable expectation that discovery will reveal the aforementioned elements." 354 F. Supp. 3d 655, 666 (E.D. Pa. 2019). That is what Rule 8 requires: "enough facts to raise a reasonable

expectation that discovery will reveal evidence of the necessary element[s].” *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008), quoted in *Connelly*, 809 F.3d at 789.

### B. Comparator allegations are not required, and the allegations must be weighed as a whole.

Each of the motion’s three substantive headings asserts that one category of allegation — the comparators, the published admissions and testing data, and Penn’s general admissions practices — does not “Supply the Missing Nexus.” ECF 34 at 12, 14, 15 (using the pagination assigned by the CM/ECF docketing system). The authority the motion gives for that framework (ECF 34 at 8) is *L.L. v. Evesham Township Board of Education*, 710 F. App’x 545 (3d Cir. 2017). *L.L.* holds the opposite of what the motion uses it for. The district court in that case “concluded that plaintiffs could not establish a prima facie claim because they failed to identify any comparators — similarly situated non-African-American students — who were treated differently from plaintiffs.” *Id.* at 548–49. The Court of Appeals answered: “This was error.” *Id.*

It explained that “comparative, or competitive, evidence is not a necessary component of a discrimination plaintiff’s prima facie case,” and that a plaintiff “could establish a prima facie case by showing ‘some additional evidence exists that establishes a causal nexus between the harm suffered and the plaintiff’s membership in a protected class, from which a reasonable juror could infer, in light of common experience, that the defendant acted with discriminatory intent.’” *Id.* (quoting *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 272, 275 (3d Cir. 2010)). It added that “the burden of establishing a prima facie case … is not onerous.” *Id.* (quoting *Anderson*, 621 F.3d at 270–71, quoting *Tex. Dep’t of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). On that reasoning the Court of Appeals reversed. The motion adopts *L.L.*’s “causal nexus” language and leaves its holding behind, devoting a section to the asserted inadequacy of Plaintiff’s comparators

(ECF 34 at 12–14) when *L.L.* held the absence of comparators was not a permissible ground of decision.

Both *L.L.* and *Anderson* said this of the evidentiary showing required to establish a prima facie case on summary judgment. The point applies with greater force here. If comparative evidence is not necessary to that showing, it cannot be a requirement of a pleading, which need not establish a prima facie case at all. *Connelly*, 809 F.3d at 788–89. The motion compounds the error by taking each category of allegation by itself and asking whether that category alone carries the entire inference. It never asks whether the allegations together do.

To satisfy Rule 8, "a complaint must contain factual allegations that, taken as a whole, render the plaintiff's entitlement to relief plausible." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) (citing *Twombly*, 550 U.S. at 556, 569 n.14, and *Phillips*, 515 F.3d at 234). The Supreme Court has said the same of how allegations are assessed on a motion under Rule 12(b)(6): "courts must consider the complaint in its entirety," and the question is "whether all of the facts alleged, taken collectively," support the required inference, "not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007). A court's "job is not to scrutinize each allegation in isolation but to assess all the allegations holistically." *Id.* at 326. *Tellabs* applied that instruction under a heightened pleading standard Congress imposed by statute. It applies with greater force under Rule 8.

For a "reverse discrimination" claim, a plaintiff "must present sufficient allegations 'to allow a reasonable fact finder to conclude (given the totality of circumstances) that the defendant treated plaintiff "less favorably than others because of h[er] race."'" *Katchur*, 354 F. Supp. 3d at

668 (quoting *Coulton v. Univ. of Pa.*, 237 F. App'x 741, 747 (3d Cir. 2007), quoting *Iadimarco v. Runyon*, 190 F.3d 151, 163 (3d Cir. 1999)). The burden is "rather modest." *Coulton*, 237 F. App'x at 747 (quoting *Marzano v. Comput. Sci. Corp.*, 91 F.3d 497, 508 (3d Cir. 1996)). *Katchur* applied that formulation to allegations on a motion to dismiss, and denied the motion — consistent with its holding that a complaint "need not meet the prima facie standard to survive dismissal" but must "contain sufficient factual allegations to raise a reasonable expectation that discovery will reveal the aforementioned elements." *Id.* at 666. The point of the formulation is not to import an evidentiary burden into Rule 8; it is that the allegations are weighed together, under the totality of the circumstances, rather than category by category. Under Title IX the court looks to the "total mix of information" supporting the claim, and a plaintiff is "not limited to alleging a particular factual scenario"; the total mix "may include, among other things, allegations that a similarly situated female was treated more favorably by the university." *Doe v. Trustees of Princeton Univ.*, No. 25-2014 (3d Cir. July 21, 2026), slip op. at 19. A comparator is one permitted route among several. It is not a gate.

### C. Facts within Defendant's exclusive control may be pleaded on information and belief.

Rule 11(b)(3) expressly contemplates factual contentions that "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Where the facts are peculiarly within the defendant's possession, that supports the pleading rather than defeating it. The motion inverts this throughout, which Part II addresses.

## II. THE MOTION DOES NOT ADDRESS THE PLEADING PLAINTIFF FILED

### A. Allegations of Defendant's nondisclosure are restated as admissions of Plaintiff's ignorance.

Paragraph 18 of the Second Amended Complaint alleges:

> Penn has not disclosed the criteria applied to Plaintiff's application, the identity of the persons who evaluated it, or what information within it was before those persons. That information is within Penn's exclusive possession and control and is not ascertainable from any public source.

The motion renders that paragraph as follows:

> Plaintiff expressly admits that he does not know "the criteria applied to Plaintiff's application, the identity of the persons who evaluated it, or what information within it was before those persons." Id. ¶ 18. (ECF 34 at 10.)

The quoted words are accurate; the subject and the verb are not. Paragraph 18 pleads a fact about Penn. The motion converts it into a fact about Plaintiff, and the second sentence of ¶ 18 — stating that the information is within Penn's exclusive possession and control and is not ascertainable from any public source — does not appear in the motion at all. The motion then builds on its own substitution: "Plaintiff does not allege facts showing why his application was denied: rather, he alleges that he does not know why it was denied." (ECF 34 at 10.) The Second Amended Complaint contains no such allegation. Plaintiff raises this with respect, and only because the same description appears in the Court's September 30 Order (ECF 30 at 3), which addressed the prior pleading. Paragraph 18 of the operative pleading is explicit on its face about whose conduct it describes.

The motion repeats the substitution twice more. Paragraph 39 alleges that "Penn has not disclosed at what stage of its process Forté Fellows were identified or selected," and that the information "is within Penn's exclusive possession and control"; the motion reports that Plaintiff "expressly acknowledges that he does not know" this, and that "[t]hose concessions are fatal." (ECF 34 at 20.) Paragraph 68 alleges that "Penn has not stated whether the criteria described in ¶ 66 were changed"; the motion reports that Plaintiff "explicitly alleges that he does not know what criteria currently govern the award." (ECF 34 at 18.) In each instance the pleading identifies information Penn possesses and has not published. A defendant's exclusive control of facts is the

circumstance Rule 11(b)(3) exists to address. It is not a concession, and it does not become one when restated in the first person.

### B. Authorities stating what is sufficient are quoted as stating what is required.

At page 23 the motion cites *Connelly* for the proposition that "a plaintiff *must* allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." The sentence at the page cited reads: "Therefore, at this early stage of the proceedings, *it is enough for* Connelly to allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." 809 F.3d at 789. The Court of Appeals used that sentence to reverse a dismissal.

At page 19 the motion states that, "[a]bsent direct evidence, a plaintiff *must* allege 'both background indicia of sex discrimination … and what is sometimes called a "particularized something more."'" The Court of Appeals wrote that "a Title IX plaintiff *can survive a motion to dismiss by alleging* both background indicia of sex discrimination … and what is sometimes called a 'particularized "something more."'" *Princeton*, slip op. at 19. A showing that is sufficient is not for that reason required. Part IV.A addresses the Title IX standard, and Part IV.B shows that the Second Amended Complaint satisfies even the motion's version of it.

### C. Defendant's own statements are treated as established facts.

The motion asks the Court to credit as true statements Penn itself authored. It observes that Plaintiff "acknowledges that the application he filled out stated" that demographic disclosure was voluntary and would not influence the admission decision (ECF 34 at 16), and that O4B's website states that identifying as LGBTQ+ "will not positively or negatively affect one's chance for admission" (ECF 34 at 22). Paragraphs 33 and 44 do allege that Penn and O4B said these things. That is the extent of the allegations.

Pleading what a defendant said is not adopting it as true. The assumption-of-truth rule operates in the plaintiff's favor; it does not require a court to credit a defendant's exculpatory account of its own conduct over the plaintiff's allegations. Whether Penn did what its disclosure said is a question of fact answerable only on evidence — Penn's procedures, the configuration of its application system, and testimony from the persons who read Plaintiff's file — none of which is in this record. Fed. R. Civ. P. 12(d). Paragraphs 35 and 80 do not concern what Penn's disclosure promised; they allege that Penn has disclosed no procedure by which the information an applicant is required to supply is kept from the persons who evaluate applications. And the motion's own citation is double-edged. The same sentence of ¶ 44 alleges that O4B tells applicants the information "is not shared with anyone outside of Admissions" — an assurance of confidentiality from persons outside the admissions office, not from the persons within it who read and evaluate applications. Penn has disclosed no procedure by which it is withheld from them.

### D. The motion omits the operative language of the paragraphs it quotes.

The motion's discussion of the Howard E. Mitchell Fellowship quotes ¶ 65 and ¶ 67 and does not mention ¶ 66. Paragraph 66 alleges that the page described in ¶ 65 links to a document "published by Wharton and hosted on Wharton's domain, which states that partnering with corporations and foundations allows Wharton to give annually ten merit-based, full-tuition awards to extraordinary students, with a preference for underrepresented groups identified as African Americans, American Indians, Hispanics and women." (Ex. G.) That allegation — an express preference, in Wharton's own document, for three named racial or ethnic groups and for women — is the one the motion's argument must answer.

Paragraph 67 is quoted, but not in full. The motion renders it: Plaintiff acknowledges that Wharton's current materials "describe a Wharton Fellowship Program for which all admitted students are considered … ." (ECF 34 at 18.) The paragraph reads in full:

> Wharton's current MBA financial aid materials do not describe the Howard E. Mitchell Fellowship or its eligibility criteria. Those materials describe a Wharton Fellowship Program for which all admitted students are considered based on the application for admission, with awards offered in the admission and financial aid letter.

Two sentences later the motion argues that Plaintiff does not allege "that eligibility for any fellowship played a role in determining whether an applicant was admitted to Wharton in the first place." (ECF 34 at 18.) The words the motion's ellipsis omits — "based on the application for admission, with awards offered in the admission and financial aid letter" — allege that Penn's own materials tie fellowship awards to the admission application and to the admission letter itself.

## III. COUNTS I AND II STATE CLAIMS FOR RACE DISCRIMINATION

### A. Plaintiff's race is no obstacle, and the burden is "rather modest."

The Court's September 30 Order recited, from *Brown v. Philip Morris*, that a section 1981 plaintiff must plead "membership in a racial minority group." (ECF 30 at 2.) *Katchur* addresses this directly: "The Third Circuit has recognized that where a plaintiff is Caucasian, as is the case here, a suit asserting 'reverse discrimination' under Section 1981 is viable even though the plaintiff is not a member of a racial minority." 354 F. Supp. 3d at 668 (citing *Iadimarco*, 190 F.3d at 161). The same is true under Title VI: "Though Plaintiff is Caucasian-American, the Supreme Court has held that Title VI supports 'reverse discrimination' claims." *Id.* at 666 (citing *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 283, 289–90 (1978)); *see also McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273 (1976).

A Title VI violation "may be proven by direct or circumstantial evidence." *Katchur*, 354 F. Supp. 3d at 665 (citing *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 275 (3d Cir. 2014)); *accord* ECF 30 at 2. Plaintiff pleads circumstantial evidence, and the measure is the totality of the circumstances under a burden that is "rather modest." *Katchur*, 354 F. Supp. 3d at 668.

**B. The comparators are sufficient at the pleading stage.**

Paragraphs 46 through 54 allege two applicants reported on a publicly accessible MBA admissions decision tracker. Both entries report "admission to the same Wharton MBA program, for the same entering class, in the same admissions cycle in which Plaintiff applied and was denied." (¶ 52; see ¶ 49.) One reports an applicant "who self-identified as female, located in the United States," with a GRE score of 327 and an undergraduate grade point average of 3.4, admitted in Round 2 with a seventy-five percent scholarship. (¶¶ 47–48.) The other reports an applicant located in Turkey with a GRE score of 326 and a grade point average of 3.22, admitted in Round 1; Plaintiff alleges on information and belief that the applicant's race differed from his own, and pleads that the tracker does not report race and that race is not ascertainable from any public source. (¶¶ 50–51.) Plaintiff's standardized test percentile is higher than that of either applicant; his grade point average is lower than the first applicant's and higher than the second's. (¶ 53.)

The motion argues these allegations are too thin because Plaintiff cannot establish that the applicants were similarly situated in every respect. That is an evidentiary objection. Whether two applicants are similarly situated is a fact-bound inquiry that cannot be resolved from the face of a pleading, and the rule the motion invokes — that comparators must be alike in all material respects — is drawn from cases decided on a developed record. At the pleading stage the question is only whether the allegations raise "a reasonable expectation that discovery will reveal evidence" of

discrimination. *Phillips*, 515 F.3d at 234. They do. Penn alone knows what was in these applicants' files, and Penn has disclosed none of it.

The motion's reliance on *Osei v. La Salle University* does not change this. The motion asserts that "the pleading standard requires 'some nexus between the adverse action suffered and the disparate treatment' before discovery begins." (ECF 34 at 10.) *Osei* is a non-precedential disposition, which "do[es] not constitute binding precedent." 3d Cir. I.O.P. 5.7. And the phrase describes one route to the required inference, not an element of the claim: comparative evidence "is not a necessary component of a discrimination plaintiff's prima facie case," *Anderson*, 621 F.3d at 272; a complaint "need not establish a prima facie case in order to survive a motion to dismiss," *Connelly*, 809 F.3d at 788–89; and the measure is whether the allegations, "given the totality of circumstances," permit the required inference, *Katchur*, 354 F. Supp. 3d at 668. And *Albright v. University of Cincinnati*, an out-of-circuit district court decision, involved a plaintiff who alleged only a misplaced application and a denial. Here the pleading identifies admitted applicants in the same cycle, Wharton documents stating express racial and sex preferences, and published figures for the class at issue.

### C. The published admissions and testing data are an argument by contradiction.

The motion calls it "facially implausible that a single MBA program enrolled" the share of qualified Black examinees that ¶ 62 describes. (ECF 34 at 14.) That implausibility is the point. Paragraphs 55 through 64 do not assert that Wharton enrolled such a share. They set out six stated assumptions (¶ 60), derive from Penn's own published figures and GMAC's published national figures the capture rate that would be required if those assumptions held (¶¶ 61–62), and allege that the required rate is not credible — from which it follows that at least one assumption is false, the pertinent one being that admission was made without regard to race. (¶¶ 63–64.)

The assumptions are disclosed precisely so the Court and Penn can test them, and Penn is free on a developed record to show that one of them fails. At the pleading stage the allegation is that a reasonable inference arises from figures Penn published about its own class. That is circumstantial evidence, which Title VI permits. (ECF 30 at 2.)

**D. Penn's acknowledged practice and its undescribed change are corroboration.**

The motion asserts that the Second Amended Complaint "relies on the same 'evidence' which this Court previously rejected." (ECF 34 at 6.) It does not. The September 30 Order identified three categories: "the history with other universities before the relevant admissions cycle, or permitted inquiries and relationships with student groups." (ECF 30 at 1.) Section VI is in none of them. It concerns no other university, no inquiry Penn made of Plaintiff, and no student group. It concerns Penn's own acknowledged admissions practice and Penn's own undescribed change to it.

The motion observes that the Common Data Set reports undergraduate admission and that Plaintiff applied to a graduate program in a later cycle. Paragraph 28 says so itself. The Second Amended Complaint pleads that on June 29, 2023, Penn's President and Provost told the university community that the decision "will require changes in our admissions practices" (¶ 25; Ex. Q) — an institutional statement, not a departmental one — and that Penn has never described the change, has published no post-decision policy, procedure, guidance, or training material, and holds the particulars in its exclusive possession. (¶¶ 26–27, 30.) The motion does not dispute that Penn considered race before that date; it argues only that doing so was then lawful. The Second Amended Complaint alleges that Penn said a change was required and has never said what it was.

## IV. COUNT III STATES A CLAIM UNDER TITLE IX

### A. The standard is the straightforward one this Court already applied.

This Court applied the governing test in September: Plaintiff must allege facts allowing the inference that a "federally-funded college or university discriminated against a person on the basis of sex." (ECF 30 at 3 (quoting *Doe v. Univ. of Scis.*, 961 F.3d 203, 209 (3d Cir. 2020)).) Our Court of Appeals calls that a "straightforward pleading standard," *Princeton*, slip op. at 21, and has deliberately declined to adopt "specific doctrinal tests, such as erroneous outcome, selective enforcement, or deliberate indifference," *id.* at 21 n.6. Plaintiffs remain "free to characterize their claims however they wish." *Id.* (quoting *USciences*, 961 F.3d at 209).

The motion recites a different test: that "[a]bsent direct evidence, a plaintiff *must* allege 'both background indicia of sex discrimination … and what is sometimes called a "particularized something more."'" (ECF 34 at 19.) What the Court of Appeals wrote is that a Title IX plaintiff "*can survive a motion to dismiss by alleging* both background indicia of sex discrimination … and what is sometimes called a 'particularized "something more."'" *Princeton*, slip op. at 19. The difference is not semantic. The Court expressly declined to decide "whether egregious procedural irregularities can ever, standing alone, suffice to support an inference of gender bias." *Id.* at 26 n.9. If a plaintiff were required to allege both components, the question whether one of them alone can suffice would already be settled: it could not, because the other would always be necessary. There would have been nothing for the Court of Appeals to reserve. The Court also left open whether to adopt the "sliding-scale approach" the appellant urged, under which stronger procedural irregularities would call for less background support. *Id.* (citing *Menaker v. Hofstra Univ.*, 935 F.3d 20, 33 (2d Cir. 2019)). Components that can be traded off against one another are not mandatory elements.

### B. The Second Amended Complaint satisfies the framework in any event.

Plaintiff does not need the framework relaxed. Background indicia: Wharton itself identified and selected Forté Fellows, "recipients of an award aimed at women" (¶ 36), and candidates for that award "were therefore identified from information contained in the general application for admission, which required every applicant to state his or her sex" (¶ 38); a Wharton document states an express "preference for underrepresented groups identified as African Americans, American Indians, Hispanics and women" (¶ 66; Ex. G); and Penn published demographic figures for its most recent MBA class, disclaimed their accuracy, declined to provide corrected figures when asked, and reduced the granularity of its subsequent public reporting (¶¶ 70–74).

The particularized showing: the application required every applicant to state his or her sex (¶ 38); that information was in the materials Plaintiff submitted, and Penn has disclosed no procedure by which it is withheld from the persons who read and evaluate applications, so those persons "had available to them the means by which an applicant's race, sex, or sexual orientation could be taken into account" (¶ 80). Penn's answer is that Plaintiff has not identified the persons who evaluated his application. (ECF 34 at 10.) He need not. Penn has not disclosed their identities (¶ 18), and a court may infer from an official's role that he was involved in reviewing an applicant's file. *Katchur*, 354 F. Supp. 3d at 666 (drawing that inference as to the Director of Admissions despite no allegation that he participated in the decision). And the Second Amended Complaint alleges a female applicant admitted to the same program, for the same entering class, in the same cycle (¶¶ 47–49) — the first example our Court of Appeals gives of what the total mix "may include." *Princeton*, slip op. at 19–20.

The regulation the Court cited in September puts the line at use, not collection. A university may ask an applicant's sex where the question is asked of both sexes and "the information is not

used for discriminatory purposes." 34 C.F.R. § 106.21(c)(iii); *see* ECF 30 at 3. Plaintiff does not allege that asking was unlawful. He alleges that Penn used the answers: it selected from the same applicant pool, using the same application, the recipients of awards preferring women. (¶¶ 36–38, 66–67.) Whether a firewall separated that use from the admission decision is a fact in Penn's exclusive possession. (¶¶ 39, 69.)

### C. The fellowship allegations concern Penn's use of sex, not Plaintiff's eligibility for an award.

The motion answers an argument Plaintiff does not make. It responds that "the existence of a fellowship that is 'aimed at women' does not plausibly establish that the University favored women in deciding who to admit," and that Plaintiff does not allege he applied for and was denied a Forté Fellowship. (ECF 34 at 20.) Plaintiff pleads no fellowship claim and seeks no fellowship relief. The allegation is mechanical: the application contained no Forté-specific item, essay, or indication of interest (¶ 37), so award candidates "were therefore identified from information contained in the general application for admission, which required every applicant to state his or her sex" (¶ 38). The motion does not address ¶ 38.

The motion's own authority is a summary judgment decision. *Tingley-Kelley v. Trustees of the University of Pennsylvania* is described in the motion as a case in which the plaintiff "presented evidence" of sex-stereotyped remarks and the court "denied summary judgment." (ECF 34 at 21.) That is a developed record after discovery. A complaint need not match it, because a complaint "need not establish a prima facie case in order to survive a motion to dismiss." *Connelly*, 809 F.3d at 788–89.

Plaintiff offers the allegations concerning Wharton Out for Business (¶¶ 40–45) only as corroboration, consistent with the Court's September 30 guidance. He notes that ¶ 43 alleges

sessions O4B identifies as "Official AdCom Events," a "Queer Admissions Fellow," and a direct line to the Wharton MBA admissions office — that is the admissions office's own programming, not a student club's.

## V. DISMISSAL WITH PREJUDICE IS NOT WARRANTED

The motion argues amendment would be futile because Plaintiff states eight times that facts are within Penn's exclusive possession and control, and therefore "concedes that he cannot identify additional facts he could plead." (ECF 34 at 22.) That does not follow. An allegation that a defendant holds information is not a statement that the plaintiff has pleaded all he can; it is the condition Rule 11(b)(3) addresses.

In any event the question is reached only if the Court finds the pleading insufficient, and the Second Amended Complaint is the first pleading Plaintiff drafted with the benefit of this Court's guidance. Granting leave to amend the prior pleading, the Court noted it was "mindful he is proceeding pro se and this Order offers him his first guidance." (ECF 30 at 3.) Plaintiff responded to each item in that guidance: he leads with the comparators, Wharton's own selection of award recipients, the published admissions and testing figures, and the demographic figures Penn published and then disclaimed, and he has reframed the remaining material as corroboration. If the Court concludes that some portion remains insufficient, dismissal should again be without prejudice.

## VI. PLAINTIFF DOES NOT OPPOSE DISMISSAL OF PROSPECTIVE RELIEF

Plaintiff does not oppose dismissal of the request for injunctive relief in paragraph (b) of the Prayer. The Second Amended Complaint alleges a completed injury, and Plaintiff does not

presently allege that he has reapplied or is able and ready to apply. *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983).

Two points should be preserved. First, standing for retrospective relief is unaffected. A request for nominal damages “satisfies the redressability element necessary for Article III standing where a plaintiff’s claim is based on a completed violation of a legal right.” *Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021). Paragraphs (c) and (d) of the Prayer are therefore unaffected by *Lyons*. Second, to the extent paragraph (a) seeks a declaration that Penn’s consideration of Plaintiff’s race, sex, and sexual orientation in the 2023-24 cycle violated these statutes, that declaration is retrospective and rests on the same footing as the damages claims; any dismissal should be limited to its prospective aspect. Plaintiff notes that *Zhong v. Cornell University*, on which the motion relies, is an unpublished decision of a district court in another circuit.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant’s Motion to Dismiss the Second Amended Complaint (ECF 34), except as to the request for injunctive relief in paragraph (b) of the Prayer for Relief, which Plaintiff does not oppose.

Dated: November 12, 2026

Respectfully submitted,

/s/ John Doe
John Doe, Plaintiff pro se
PO Box 151133
Los Angeles, CA 90015
johndoediscriminationsuit@gmail.com
(502) 286-3652

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2026, I caused a true and correct copy of the foregoing Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Second Amended Complaint, together with the proposed Order, to be served upon counsel of record for Defendant by electronic mail, addressed as follows: James A. Keller, Esq. (James.Keller@saul.com) and Jesse L. Krohn, Esq. (Jesse.Krohn@saul.com), Saul Ewing LLP, 1735 Market Street, Suite 3400, Philadelphia, PA 19103, counsel for Defendant The Trustees of the University of Pennsylvania.

/s/ John Doe

John Doe, Plaintiff pro se